Argued and submitted October 5, reversed and remanded December 19, 1982

## SUESS BUILDERS COMPANY et al,
*Petitioners on review,*

*v.*

## CITY OF BEAVERTON et al,
*Respondents on review.*

(SC 28615, CA A20101, TC 40569)

656 P2d 306

Terry D. Morgan, Portland, argued the cause and filed briefs for petitioners on review. With him on the brief was Morgan & Shonkwiler, P.C., Portland.

Carrell F. Bradley, Hillsboro, argued the cause and filed briefs for respondents on review. With him on the brief was Schwenn, Bradley, Batchelor and Brisbee, Hillsboro.

Kevin L. Hanway, Lake Oswego, filed briefs for amici curiae Home Builders Association of Metropolitan Portland, and Oregon State Home Builders Association.

Roger J. Marzulla and Alison Ling Noven filed an amicus curiae brief for Mountain States Legal Foundation. With them on the brief was Steven P. Couch, Co-counsel, Klamath Falls.

Before Lent, C.J., Linde, Peterson, Tanzer, Campbell and Carson, JJ.

LINDE, J.

## LINDE, J.

Plaintiffs own 9.4 acres of land in the city of Beaverton. In a complaint against the city and the Tualatin Hills Park and Recreation District, plaintiffs allege that these governmental bodies temporarily deprived them of the rental value of the property and caused a permanent depression of its market value by designating the major part of the property as a future park site in the city's comprehensive land use plan, and that this constituted a compensable taking of their property for public use under Oregon Constitution article I, section 18 and the federal fifth and fourteenth amendments.[1] The complaint also alleged claims under 42 USC §§ 1983 and 1985(3). Upon the defendants' motion to dismiss the complaint, the trial court entered judgment for defendants. The Court of Appeals affirmed on the strength of this court's decision in *Fifth Avenue Corp. v. Washington County,* 282 Or 591, 581 P2d 50 (1978). We allowed review to consider plaintiffs' claim that their complaint satisfied the criteria stated in that decision or, if not, that those criteria should be reconsidered. We hold that the complaint sufficed to survive a motion to dismiss.

### I. *The "taking" claim.*

In *Fifth Avenue Corp.,* a landowner sought compensation from Washington County for portions of its property which were designated for a public transit station and a greenway on the county's comprehensive plan but which neither the county nor another public authority then proceeded to acquire. The court noted that planning for future

-----

[1] Or Const art I, § 18:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered; . . . ."

US Const amend V:

"No person shall. . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

US Const amend XIV, § 1:

"No State shall. . . deprive any person of life, liberty, or property, without due process of law; . . . ."

acquisition as such does not constitute a compensable taking of property, even if anticipation of the eventual taking substantially diminishes the uses of the property that will seem worthwhile to its owner or to potential buyers, but that the result might be different where the plan designation itself imposes a present prohibition on inconsistent private uses. Such a prohibition might result from the rule that zoning or other land use decisions must be consistent with the comprehensive plan. ORS 197.175(2); *Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 772 (1975). But the court also noted that the *Baker* rule, which precludes allowing a private use more intensive than the private use contemplated in a comprehensive plan, might not apply with equal force to allowing some private use pending public acquisition of the property for a planned public use, even if the public use will be less "intensive" than the prior private use.

> "More intensive private development than that allowed by the plan is not likely to be reversible in favor of less intensive private use. The same is not necessarily true with respect to eventual public acquisition of land tentatively designated as a site of a future public facility. There the question of the interim use of the land involves the eventual cost of the planned public use rather than its entire preclusion by allowing a present private use."

*Fifth Avenue Corp., supra,* 282 Or at 611 n. 15.

█    In other words, a landowner who requests or a local government that would allow a present use more intensive than a different private use designated in the comprehensive plan normally cannot show how the two are compatible or how the intensive, financially more valuable use will be replaced by the later less intensive private use; but such a showing may be possible if the eventual use designated in the plan contemplates acquisition of the land by one of the public entities participating in the plan.[2] The court therefore stated that a landowner could not seek compensation in an "inverse condemnation" action unless he could show that the city or county would permit no economically feasible private uses of the land pending the eventual

---

[2] Counties, cities, and local districts are obliged to coordinate their plans, ORS 197.175 to 197.190.

taking for public use.[3] The designation of the eventual public use in the plan and citation of *Baker v. City of Milwaukie, supra,* alone do not suffice to show preclusion of all interim uses. Rather, the court concluded that

> "[E]ven if planning or zoning designates land for a public use and thereby effects some diminution in value of his land, the owner is not entitled to compensation for inverse condemnation unless: (1) he is precluded from all economically feasible private uses pending eventual taking for public use; or (2) the designation results in such governmental intrusion as to inflict virtually irreversible damage."

*Fifth Avenue Corp., supra,* 282 Or at 614.

Petitioners and amici curiae invite us to reconsider *Fifth Avenue Corp. v. Washington County, supra,* to pursue what they claim to be a more sophisticated analysis of "regulatory takings." We see no occasion to do so. The issue in this case does not arise from regulation of the private use of property. That happens to many forms of business enterprise and private investment, not peculiarly to investment in real property, where it perhaps stirs special atavistic memories of the feudal and pioneering past. And land use control is not the only kind of regulation directed to specific identifiable property. The generality of a rule often safeguards against biased and unequal political decisions, but that alone does not turn a more narrowly focused ruling into a taking. A newly adopted health or environmental regulation may forbid the use of a fuel or the production of certain wastes and thereby cause the closure of a large plant. A tightened safety standard may devastate

---

[3] "Inverse condemnation" is neither a constitutional nor a statutory term but only "the popular description of a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Thornburg v. Port of Portland,* 233 Or 178, 180 n. 1, 376 P2d 100 (1963). Actions to recover compensation for such a governmental taking long preceded the label; *see, e.g., Morrison v. Clackamas Cty.,* 141 Or 564, 18 P2d 814 (1933). The United States Supreme Court has said that "[t]he phrase 'inverse condemnation' appears to be one that was coined simply as a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *United States v. Clarke,* 445 US 253, 257, 100 S Ct 1127, 63 L Ed 2d 373 (1980).

an investment in expensive machinery or product inventory.[4] New building codes or other rules concerning fire safety or access for handicapped persons may make it uneconomic to maintain a hotel or residential building, with consequent financial loss. Business invests with knowledge of such governmental power to make laws for its conduct, and the balancing of regulatory goals against their economic consequences is the daily stuff of politics rather than of litigation for "just compensation." *See Anthony v. Veatch,* 189 Or 462, 494, 220 P2d 493 (1950) (prohibition of "fixed gear" fishing); *City of Portland v. Meyer,* 32 Or 371, 52 P 21 (1898) (prohibition of slaughter house). Regulation in pursuit of a public policy is not equivalent to taking for a public use, even if the regulated property is land.[5]

---

[4] *Cf. Andrus v. Allard,* 444 US 51, 100 S Ct 318, 62 L Ed 2d 210 (1979), sustaining a prohibition against commercial transactions in eagle feathers against a claim that this constituted a "taking" of feathers in private ownership before the prohibition.

[5] Although the basic thrust of the fifth amendment and art I, § 18, is generally the same, *see Cereghino v. State Highway Comm.,* 230 Or 439, 444-445, 370 P2d 694 (1962), the criteria of compensable "taking for public use" under art I, § 18, are not necessarily identical to those pronounced from time to time by the United States Supreme Court under the fifth amendment. For instance, plaintiffs refer to the phrase "investment-backed expectations" in *Penn Cent. Transp. Co. v. N. Y. City,* 438 US 104, 124, 98 S Ct 2646, 57 L Ed 2d 631 (1978), but this court has not mentioned such an element in cases under art I, § 18. Nor have we regarded "fairness and justice" as a usable tool to draw a legal line between regulation and taking, as *Penn Central* suggests, 438 US at 123-24. This referred to a phrase in *Armstrong v. United States,* 364 US 40, 49, 80 S Ct 1563, 4 L Ed 2d 1554 (1960), that Justice Black probably did not mean to epitomize his legal theory.

Investment-backed expectations, of course, exist in planned uses of other tangible or intangible private assets than land; the question is whether such expectations should take account of governmental power to change the laws. As we understand it, "investment-backed expectations" are a necessary but not a sufficient element before a regulation precluding any economic use of property can be attacked as a compensable taking or as a deprivation of property under the 14th amendment; but private property actually taken for public use must be paid for whether it represents an investment or not. Of course there are hypothetical and not so hypothetical situations in which it may be argued that government is misusing regulatory power to impose on private property the burdens of actual governmental or public uses as a means of circumventing its obligation to pay, as for instance by making a carrier provide free transportation for government employees or goods or by imposing a right of passage for the public across private land. *See, e.g., Kaiser Aetna v. United States,* 444 US 164, 100 S Ct 383, 62 L Ed 2d 332 (1979); *Griggs v. Cty. of Allegheny,* 369 US 84, 82 S Ct 531, 7 L Ed 2d 585 (1962).

There is no occasion here to enter upon such arguments, because it is not claimed that defendants demanded any kind of use of plaintiffs' land beyond designating it for eventual acquisition for a park.

The issue in this case, however, arises from a governmental plan to acquire private land for public ownership. Regulation enters this case only because plaintiffs claim that the plan designation in legal and practical effect made the property unusable for anything other than the indicated public taking until the defendants changed their minds and rescinded their decision to acquire it. Except for the planned acquisition, the city's regulatory policy, in the form of its zoning ordinance, was to allow low density residential development of the land. According to this claim, the governmental bodies in effect told plaintiffs to hold parts of their land for the park district, subject to taxes and without an opportunity to make economic use of it or to place it on the market, until the district was politically and financially ready to buy it for the planned park.

If so, that would not be the equivalent of taking the property entirely when the comprehensive plan was adopted. Adoption of the plan would not mean that defendants were obligated to buy the land and plaintiffs could sue for the price. The governmental bodies could change their minds, as they in fact did, and the landowners would retain their property. Given that governments, like other buyers, do change their plans and that if they do not, they would eventually pay for the property, it cannot even be taken for granted that the property could not be sold in the interim. But adoption of a plan could be the equivalent of taking the use of the property until the government decided to buy it or to release it, if the legal effect of defendants' actions is to "freeze" the status of the land for that purpose without any possibility of an economic use. If that is the effect, it might be described as analogous to seizing from the landowner an option to buy the land during an indefinite term. As this case comes before us upon a judgment dismissing the complaint, the narrow issue is whether the plaintiffs sufficiently plead such action by the defendants to require them to answer. We therefore turn to the complaint.

The complaint alleges, in summary, that plaintiffs' property was zoned for low density residential use under a 1960 city ordinance; that between 1966 and 1971 plaintiffs pursued with the city their proposals for residential development of the property, which were not approved; that

between 1971 and 1976 the park district offered to purchase the property at a price below its fair market value; that in 1972 the city adopted a comprehensive plan which designated two-thirds of plaintiffs' property as a site for a future public park; that the park district refused to exercise its condemnation powers "but rather has placed a cloud of condemnation over the property in order to acquire Plaintiffs' land at less than its fair market value," conspiring with the city "in order to acquire a park for the City without exercising its condemnation authority;" and that defendants' actions "irreversibly deprived the Plaintiffs of the fair rental value of all their property" until April 1979, when the city removed the park designation of plaintiffs' property from its comprehensive plan. These actions are. alleged to give rise to a claim of just compensation and to damages under the state and federal constitutions, and to "civil rights damages" under 42 USC § 1983. For a third cause of action the complainant alleges that the defendants "acting in concert and with discriminatory animus, have conspired on a continuing basis to deprive Plaintiffs of their rights to the use and enjoyment of their property," giving rise to liability under 42 USC § 1985(3).

■   The critical question under *Fifth Avenue Corp.,* as stated above, is whether the landowner faced with a plan designation of his land for a public use can show that he is precluded from all feasible private use of the property pending its eventual acquisition. The decision also held that in making this showing, the landowner may not simply rest on the apparent preclusive effect of the plan or other regulation when administrative procedures exist by which he might obtain at least temporary or partial relief, including administrative procedures for amending the plan. If such procedures for seeking relief exist, they must be pursued. 282 Or at 614-621.[6] Petitioners contend that

---

[6] Petitioners suggest alternative ways by which a comprehensive plan can avoid the rigidity of the preclusive effect of the planned public use or its confiscatory impact or both. The planning devices suggested by petitioners may be useful as a matter of policy, but we do not impose them upon policymakers as a matter of constitutional law. An administrative procedure for raising and deciding the issues may not be as good a planning technique, particularly where plan changes are difficult and subject to time consuming review, yet if that is the available procedure a landowner who has not pursued it cannot show that the "taking" agencies will neither allow him some beneficial use of his property nor proceed to acquire it for the planned public use.

the discussion of the exhaustion requirement in *Fifth Avenue Corp.* referred to a claim that the prohibitory effect of the plan was invalid, not a claim for compensation, but we are not persuaded that this makes a difference. The significance of exhaustion is not to fix the time when the infringement of plaintiffs' rights occurred. Rather, if a means of relief from the alleged confiscatory restraint remains available, the property has not been taken.

In *Fifth Avenue Corp.*, the court concluded that the landowner's complaint did not allege facts which, if proved, would show that plaintiff was precluded from all economically feasible private uses pending eventual taking of the property planned for a transit station or a greenway, so that a demurrer to the complaint was properly sustained. 282 Or at 614. The present plaintiffs contend that they have pleaded sufficient facts to survive a motion to dismiss. Their first argument, that as a matter of law the land could have no economic use once the comprehensive plan destined it to become a public park, is not new and has been dealt with above. Nor does plaintiffs' allegation that the city and the park district acted in concert differentiate this case from *Fifth Avenue Corp.*, where we noted that the county, whose comprehensive plan was alleged to take plaintiff's property for a transit station, might not be the governmental agency that would acquire the property for that purpose. 282 Or at 609 n. 14.

■    To find that the case pleaded in this complaint goes beyond the simple restrictive effect of the comprehensive plan itself, the additional elements must be found in the alleged dealings between the plaintiffs and the governmental entities. Paragraphs IV and VIII of the complaint allege unsuccessful efforts by plaintiffs to have the property rezoned from low density to medium density residential use. Those paragraphs do not amount to an allegation of refusal to allow any present development whatever. Other paragraphs allege that the plan called for the defendants to begin acquiring and developing park land, that the park district attempted to negotiate a purchase from plaintiffs between 1971 and 1976, and that the city acquired easements across plaintiffs' land for drainage ways and bike paths. (It is not clear from the last allegation whether these were steps toward future park development.) Paragraph IX

alleges that defendants "induced" plaintiffs to believe that their property would be acquired, to grant the easements, and "to refrain from submission of further development applications on the subject property."

The last mentioned allegations do not set forth in detail how the governmental bodies "induced" plaintiffs to forego further attempts to develop their property. These allegations may refer only to plaintiffs' applications for multifamily residental development, which would require zone changes quite apart from the park designation, or they may refer to "inducing" plaintiffs to abandon any development whatever because of defendants' determination to acquire the land. The language is broad enough to encompass a hypothetical claim that defendants told plaintiffs that the property was certain to be acquired, that it would be useless to pursue any proposals for private development, and that defendants began to acquire easements for certain facilities. If that were the case, and defendants later abandoned their plans, a court could find that one or perhaps both of the governmental bodies had temporarily taken all economic use of plaintiffs' property. The complaint may, of course, not mean to claim so much, or the evidence may not support it. These are matters for an answer, motions, and subsequent procedures on summary judgment or trial. As the trial court dismissed the complaint, we judge it only on its face. It is to be "liberally construed." ORCP 12A. For the reasons stated, the complaint was sufficient to survive defendants' motion to dismiss.

## II. *Other claims and defenses.*

Plaintiffs' claim under 42 USC § 1983 differs from the foregoing insofar as it rests on the protection of plaintiffs' property rights only under the federal but not under the state constitution.[7] Otherwise it incorporates by reference the factual allegations discussed above.

---

[7] 42 USC § 1983 (1976):

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ The third cause of action, under 42 USC § 1985, adds the allegation that defendants acted "with discriminatory animus." The crux of a claim under section 1985 is that defendants conspired to deprive plaintiffs of equal treatment under the laws.[8] If an act in furtherance of the conspiracy injured plaintiffs, the injury need not be to some other constitutional right. We think, however, that the insertion of the phrase "with discriminatory animus" without more is not sufficient to allege an intended denial "of the equal protection of the laws, or of equal privileges and immunities under the laws." A claim of denial of equal treatment, or "discrimination," necessarily requires a comparison with the rights, privileges, or immunities allegedly accorded someone else. Nothing in this complaint, even liberally construed, states or implies how the selection of plaintiffs' land rather than some other land as a future park site resulted from a "discriminatory animus," or that defendants singled them out for adverse treatment for an impermissible reason. We therefore affirm the dismissal of the claim under 42 USC § 1985 for "failure to state ultimate facts sufficient to constitute a claim," ORCP Rule 21A(8).

Plaintiffs' coupling of a claim for damages under 42 USC § 1983 with its claim for compensation under state law potentially involves a series of difficult and unsettled issues. Defendants assert, apart from the insufficiency of plaintiffs' allegations, that the § 1983 claim is barred because plaintiffs did not give the notice required by the Oregon Tort Claims Act, ORS 30.275. If the legislature intended to make claims under the federal law contingent on giving such notice to the designated official, this raises the question whether such a requirement is "inconsistent with the Constitution and laws of the United States," 42

---

[8] 42 USC § 1985(3) (1976):

"If two or more persons... conspire... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages ...."

USC § 1988,[9] or whether the legislature has decided to open the state courts only conditionally to the vindication of federal civil rights.[10] The court found it unnecessary to decide a similar issue in *Maddox v. Clackamas County School District No. 25,* 293 Or 27, 35-36, 643 P2d 1253 (1982), a school teacher's claim alleging an unconstitutional discharge, because the teacher had given notice of his claim under ORS 30.275 within 180 days of the post-termination hearing procedures that allegedly fell short of 14th amendment due process.[11] Whether the same ruling as in *Maddox* is proper here depends on whether the 42 USC § 1983 claim pleaded by these plaintiffs arises before they are denied compensation for the alleged taking of their property.

Except for the interpretation of ORS 30.275, all the foregoing are questions of federal law, several of them not yet answered by the United States Supreme Court. They have not been analyzed or briefed in depth in the present appeal. As a matter of theory, it can be argued that a violation of the 14th amendment, actionable under 42 USC § 1983, arises not from the taking of plaintiff's property but only when the state fails to provide compensation, in this case only when the "inverse condemnation" action is decided. Until then, neither the period for giving notice under ORS 30.275 nor the period within which to sue on the federal claim begins to run. This differs from the injury a teacher suffers when he is wrongfully discharged from a teaching position.

It also can be argued, to the contrary, that an inverse condemnation action is not a regular procedure provided by the state to settle claims for just compensation,

---

[9] *See Bd. of Regents v. Tomanio,* 446 US 478, 100 S Ct 1790, 64 L Ed 2d 440 (1980); *Robertson v. Wegmann,* 436 US 584, 98 S Ct 1991, 56 L Ed 2d 554 (1978).

[10] The United States Supreme Court has not decided the question whether a state must entertain a claim under § 1983, perhaps because states generally do so. *Martinez v. Cal.,* 444 US 277, 283 n. 7, 100 S Ct 553, 558 n. 7, 62 L Ed 2d 481 (1980).

[11] *See also Roberts v. Mills,* 291 Or 21, 628 P2d 714 (1981) (successful relief by state writ of habeas corpus makes § 1983 claim superfluous).

The Supreme Court of California has held that application of that state's similar tort claim notice requirement to a claim under 42 USC § 1983 would contravene the supremacy of federal law. *Williams v. Horvath,* 16 Cal 3d 834, 129 Cal Rptr 453, 548 P2d 1125, 1127-30 (1976).

which must be followed before there is a premise for a constitutional claim. Rather, as already noted, "inverse condemnation" is only a popular label for an action demanding a judicial remedy for what is alleged to be a completed unconstitutional act. Oregon law forbids local governments to take private property for public use "without such compensation first assessed and tendered," Oregon Constitution, article I, section 18, *and see* ORS 35.205-35.415. It does not provide a procedure for going forward with the local government's program while the claim for compensation is considered and decided, as it does when the condemnor expects to pay. *See* ORS 35.265.

Federal court decisions are divided between the two theories. When the state initiates condemnation proceedings designed to award just compensation, there is no federal claim unless and until the state proceedings fall short of federal standards. *See Ballard Fish & Oyster Co. v. Glaser Construction Co.,* 424 F2d 473, 475 (4th Cir 1970), citing *Dohany v. Rogers,* 281 US 362, 366, 50 S Ct 299, 74 L Ed 904 (1930). A district court reached the same result where there was a prescribed procedure in the New York Court of Claims for recovering the fair market value of property taken in a *"de facto* appropriation." *Kohlasch v. New York State Thruway Authority,* 460 F Supp 956, 960-961 (SD NY 1978). These were not actions for damages under 42 USC § 1983, but the same reasoning has been applied in such actions. *Elterich v. City of Sea Isle City,* 477 F2d 289 (3rd Cir 1973).[12] On the other hand, another decision in the same district as *Kohlasch, supra,* declined to follow that precedent in a § 1983 action alleging a conspiracy between the City of New York and a private corporation to delay acquisition of plaintiff's property until they could obtain a lower price in a tax foreclosure sale. *Archer*

---

[12] *Accord, Kao v. Red Lion Mun. Auth.,* 381 F Supp 1163, 1166 (MD Pa 1974):

"The fact that there allegedly has been a taking of plaintiffs' property without compensation or before any condemnation has taken place does not mean plaintiffs' constitutional rights were violated, since compensation is available under Pennsylvania law."

*See also Light v. Blackwell,* 472 F Supp 333 (ED Ark 1979), *aff'd* 620 F2d 307 (8th Cir 1980) (no federal claim because due process remedies available in state court and state claims commission).

*Gardens, Ltd. v. Brooklyn Center Development Corp.,* 468 F Supp 609, 613-14 (SD NY 1979), citing earlier decisions.[13]

■ ■   Perhaps the theory that the inverse condemnation action is predicated upon a completed deprivation of federal as well as state constitutional rights and therefore coincides with a § 1983 claim is as logical as the contrary theory that there is no 14th amendment deprivation unless the state claim for compensation fails. As we have noted, however, it is a question of federal law, and most of the federal decisions adopt the second view. We do the same and hold that the § 1983 claim does not ripen until the claim under Oregon Constitution, article I, section 18, has been decided. It therefore is not precluded by lack of notice under ORS 30.275 or by the statute of limitations.

The parties disagree about the period of limitation applicable to the claim for compensation if a plaintiff can establish a taking for public use. This is a question that has led to divergent holdings under different state statutes. Annotation, 123 ALR 676 (1939). Plaintiffs argued in the trial court that the applicable statute of limitations is ORS 12.080(3), which allows six years within which to commence an action "for interference with or injury to any interest of another in real property." On appeal, they argue for a 10-year limitation under that part of ORS 12.040(1) which ties suits "for the determination of any right or claim to or interest in real property" to the period allowed for actions for the recovery of real property, ORS 12.050. Defendants

---

[13] As *Archer Gardens, Ltd.,* illustrates, in the federal courts the question when a federal constitutional claim arises tends to merge with the question whether a plaintiff must exhaust available state remedies, although these are different issues. *See Ballard Fish & Oyster Co., supra,* 424 F2d at 475. Courts on both sides cite United States Supreme Court decisions on the significance of state remedies in federal § 1983 actions, *e.g. Ingraham v. Wright,* 430 US 651, 678, 97 S Ct 1401, 51 L Ed 2d 711 (1977) for exhaustion and *Monroe v. Pape,* 365 US 167, 183, 81 S Ct 473, 5 L Ed 2d 492 (1961) against. *Cf. also Bd. of Regents v. Tomanio, supra* n. 9 (exhaustion not required), *Parratt v. Taylor,* 451 US 527, 542-44, 101 S Ct 1908, 68 L Ed 2d 420 (1981) (no § 1983 claim for negligent loss of prisoner's property where state tort remedy is adequate) *and Paul v. Davis,* 424 US 693, 96 S Ct 1155, 47 L Ed 2d 405 (1976) (no § 1983 claim for defamation where tort action available). These cases, however, do not include a § 1983 claim alleging an unconstitutional "taking" of property. In a state court, of course, the issue is not exhaustion of state judicial remedies but only the question when the elements of a deprivation of property without due process ripen into a claim under 42 USC § 1983.

hold out for a two-year period of limitations under their tort theory.

■ This is not a "suit" to determine plaintiffs' rights, claims, or interest in their real property. Their present rights in that property are undisputed. Several subsections of ORS 12.080 arguably apply. The action may be one for interference with their interest in real property within ORS 12.080(3). Possibly it might be characterized as an action upon a liability which is either statutory and thus within ORS 12.080(2), because the obligation to pay just compensation and a procedure for assessing it are stated in ORS chapter 35 as well as being constitutionally required, or as an action upon an "implied" liability within ORS 12.080(1), because governmental conduct that takes property for a public use constitutionally implies the obligation to pay for such a taking, somewhat analogous to an obligation to pay for unjust enrichment. *Cf. Richardson v. Investment Co.,* 124 Or 569, 264 P 458 (1928), *and see Hunter v. City of Mobile,* 244 Ala 318, 13 So 2d 656 (1943). Each of these subsections leads to a six-year period of limitation. Moreover, that would be the period under ORS 12.080(4) when property taken is characterized as "personal" instead of "real" property. We think that ORS 12.080(3) covers this case.

The decision of the Court of Appeals is reversed and the case is remanded to the circuit court for further proceedings.