Argued and submitted November 14, 2002, summary judgment in favor of
defendant reversed and remanded February 12, 2003

## BOISE CASCADE CORPORATION,
a Delaware corporation,
*Appellant,*

*v.*

## BOARD OF FORESTRY,
*Respondent.*

### 93-2018; A115966

63 P3d 598

Phillip D. Chadsey argued the cause for appellant. With him on the briefs were Charles F. Adams and Stoel Rives LLP.

David F. Coursen, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

DEITS, C. J.

---

* Deits, C. J., *vice* Armstrong, J.

**DEITS, C. J.**

This appeal concerns the latest installment in an ongoing dispute between plaintiff Boise Cascade Corporation (Boise), and defendant Board of Forestry (board), that has been taking place for a decade. After our last remand of the case to the trial court, it denied Boise's motion for summary judgment and granted the board's motion for summary judgment. Boise appeals. As explained below, we conclude that the trial court properly denied Boise's motion for summary judgment, but that the board was not entitled to summary judgment either. We thus reverse and remand.

In May 1992, the board denied Boise's plan to harvest timber from a 56-acre portion of the "Walker Creek Unit" in Clatsop County in which a pair of northern spotted owls were nesting. Boise initiated this action for inverse condemnation in early 1993, alleging that, by failing to approve that plan, the board had "taken" certain timber in violation of Article I, section 18, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. The trial court dismissed Boise's claims on the ground that it lacked subject matter jurisdiction and that Boise's complaint failed to state a claim. At virtually the same time, Boise petitioned for judicial review of the order disapproving the timber harvest and appealed the trial court's dismissal of its inverse condemnation claim. In the administrative review case, we rejected Boise's arguments concerning the validity of the administrative rule upon which the board based its decision and affirmed the order. *Boise Cascade Corp. v. Board of Forestry (A78968)*, 131 Or App 552, 886 P2d 1041 (1994), *aff'd*, 325 Or 203, 935 P2d 422 (1997) (*Boise I*). In the inverse condemnation case, we held that the trial court had erred in concluding that it lacked jurisdiction, and further held that Boise's complaint did state a claim. *Boise Cascade Corp. v. Board of Forestry (A79626)*, 131 Or App 538, 886 P2d 1033 (1994) (*Boise II*). On review of that case, the Oregon Supreme Court agreed with us in pertinent part that the court had jurisdiction and that Boise had stated a claim for a regulatory taking. *Boise Cascade Corp. v. Board of Forestry (S42159)*, 325 Or 185, 935 P2d 411 (1997) (*Boise III*).

On remand, Boise dropped its claim under Article I, section 18, of the Oregon Constitution. The trial court granted Boise partial summary judgment, ruling as a matter of law that a regulatory taking had occurred. Around that time, one of the nesting owls died, the other left the Walker Creek Unit, and the board lifted its temporary restriction on Boise's logging of the site. Boise's claim thus was transformed to a claim for a "temporary" taking.[1] Damages were tried to a jury, as was the question of whether a taking by "physical occupation" had occurred. After a jury verdict in Boise's favor, the board appealed.

In that appeal, the board argued that the trial court erred in failing to dismiss Boise's claim, in granting partial summary judgment, in striking its ripeness defense, and in numerous other respects. *Boise Cascade Corp. v. Board of Forestry*, 164 Or App 114, 116-18, 991 P2d 563 (1999), *rev den*, 331 Or 244 (2000), *cert den*, 532 US 923 (2001) (*Boise IV*). In *Boise IV*, we agreed with the board on two of its arguments. First, we agreed that the trial court erred in submitting Boise's taking by "physical occupation" theory to the jury. 164 Or App at 126. Second, we agreed that the trial court erred in striking the board's defense that Boise's claim was not ripe because it had neither attempted to obtain an "incidental take permit" (ITP)[2] nor shown that attempting to obtain such a permit would have been futile. *Id.* at 128-32. We also rejected Boise's argument that its trial exhibits demonstrated that it would have been futile to try to obtain an ITP. First, we noted that trial exhibits were not relevant to whether the trial court erred in striking a defense from the pleadings. *Id.* at 133. Alternatively, we concluded that the exhibits on which Boise relied did not, in fact, demonstrate

---

[1] We note that the legal landscape for "temporary" takings has changed significantly since this issue was initially presented to the trial court. *See Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency,* 535 US 302, 122 S Ct 1465, 152 L Ed 2d 517 (2002) (a temporary restriction that merely causes a diminution in value of property is not a taking of the parcel as a whole; property is not rendered valueless by a temporary prohibition on economic use because the property will recover value as soon as the prohibition is lifted).

[2] The administrative rule under which the board had denied Boise's harvesting plan allowed an exception to the requirement for protecting northern spotted owl nesting sites if the operator had obtained an incidental take permit pursuant to the federal Endangered Species Act. *Id.* at 128.

futility. *Id.* We thus reversed the verdict in favor of Boise and remanded the case. *Id.*

On remand, both parties sought summary judgment on the question of ripeness and futility. Most of Boise's arguments in support of summary judgment were to the effect that this court's decision concerning ripeness and futility in *Boise IV* was wrong. The trial court rejected those arguments and, to the extent that Boise repeats them at great length on this appeal, we reject them without further discussion. *See generally State v. Pratt*, 316 Or 561, 569, 853 P2d 827 (1993) (under the law of the case doctrine, "when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal").

Boise also argued in its motion for summary judgment, however, that it was entitled to judgment as a matter of law on the question of futility. Boise suggested that the board, in asserting a ripeness defense, was required to demonstrate that, had Boise sought an ITP, the federal United States Fish and Wildlife Service (USFWS) would have granted it and, further, that the board then would have authorized the logging on the Walker Creek Unit. In support of its arguments, Boise relied on certain federal "guidelines for consideration of incidental take permits" that it asserted "call[ed] for the *elimination* of, and not the granting of permits for, timber sales that embrace active nesting sites." (Emphasis in original.) It also submitted materials from which it drew the conclusion that, even after the female owl died and the male owl moved away in 1997, "the USFWS *still* took the position that the Walker Creek site had not been abandoned under federal law." (Emphasis in original.) *But see* 186 Or App at 303 n 5. Boise asserted that the USFWS's position in the late 1990s demonstrated that it would not have granted an ITP when Boise first sought to log the site many years earlier.

The board, in its motion for summary judgment, asserted that it was too late, as a matter of law, for Boise to be able to demonstrate futility. The gist of the board's argument

on this point was that Boise was required to have made its "futility" showing concerning an ITP in the course of *Boise I*, the administrative case described above. The board argued that "estoppel" and "issue preclusion" prevented Boise from arguing in the present case that it would have been futile to attempt to obtain an ITP, because it maintained a position in *Boise I* that ITPs were not required for private lands. While the board maintained that Boise's showing on summary judgment was insufficient to demonstrate futility as a matter of law, the board did not make any arguments other than those described above, or submit any exhibits, to show that it was entitled to summary judgment on the question of ripeness and futility as a matter of law.

The trial court granted the board's motion and denied Boise's motion. Its letter opinion indicated that it was denying Boise's motion on the ground that Boise had demonstrated nothing more than "predictions" about the likely success of an application for an ITP, and that it was granting the board's motion on the ground of "issue preclusion."

Boise appeals, arguing that the trial court erred in granting the board's motion for summary judgment and in denying its own motion. As noted above, we summarily reject Boise's attempts to relitigate the issue decided in the previous appeal concerning the availability of the ripeness defense, thus disposing of the majority of the arguments Boise asserts in this appeal. That leaves, as viable issues before us, Boise's argument that it was entitled to summary judgment as a matter of law on the board's ripeness defense and its argument that the board was not entitled to summary judgment as a matter of law on that defense.

In response, the board concedes that Boise's failure to litigate futility in *Boise I* does not preclude Boise from attempting to demonstrate futility in this proceeding. The board acknowledges that that was the basis for the trial court's grant of its motion for summary judgment. The board argues, however, that "the trial court also dismissed because Boise failed to show that its claim was ripe * * * and failed to present sufficient evidence of futility to raise a factual issue and avoid summary judgment." The board also asserts as an alternative basis for affirmance that the trial court's grant of

the board's motion for summary judgment was correct because Boise, having dropped its claim under Article I, section 18, of the Oregon Constitution, cannot, as a matter of law, establish a violation of the Fifth Amendment to the United States Constitution. *See generally Suess Builders Co. v. City of Beaverton*, 294 Or 254, 656 P2d 306 (1982) (a federal takings claim does not ripen until the claim under Article I, section 18 has been decided).[3] Finally, the board asserts that, regardless of whether it was entitled to summary judgment, Boise nonetheless was not entitled to summary judgment on the futility issue based on the exhibits that it submitted.

We turn first to the board's asserted alternative basis for affirmance based on *Suess Builders Co.*, because it potentially would dispose of all issues in this case. As noted, this asserted basis for affirmance concerns a different theory of "unripeness" from the theory that the board pleaded as a defense and that served as the basis for our previous remand in *Boise IV*. In *Boise II*, 131 Or App at 540 n 2, we noted that ripeness issues are not jurisdictional, and that they generally must be presented as matters of defense. Here, while the board did assert a ripeness defense below, it was not the *same* ripeness defense it now sets forth. We conclude that an entirely new ripeness defense that was not raised in the lower court cannot serve as an alternative basis for affirmance on appeal. In *Rogers v. Valley Bronze of Oregon, Inc.*, 178 Or App 64, 68-69, 35 P3d 1102 (2001), we concluded that a new theory of defense of failure to state a claim under ORCP 21 A(8) could not be advanced in the first instance on appeal, given the rationale of *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 381, 8 P3d 200 (2000), *adhered to on recons*, 331 Or 595, 18 P3d 1096 (2001), that ORCP 21 G(3) requires such a defense to be made "in any pleading permitted or ordered under Rule 13 B or by motion for judgment on the pleadings or at trial on the merits." That holding is controlling here. The board's ripeness defense based on *Suess Builders Co.* is, in essence, a defense of failure to state ultimate facts sufficient to constitute a claim, ORCP 21 A(8). As such, it must be raised under the circumstances specified in

---

[3] *Accord Bailey v. U. S. Army Corps of Engineers*, 56 ERC 1134, 33 Envtl L Rep 20,118 (D Minn 2002) (federal takings claim was not ripe because plaintiff failed to pursue an inverse condemnation action based on state constitution).

ORCP 21 G(3). In *Rogers*, we noted that an "appeal from an order granting a motion to dismiss is not one of the limited circumstances in which a defendant may assert a new defense of failure to state ultimate facts constituting a claim." 178 Or App at 69. Neither is an appeal from a summary judgment.

We thus turn to the first issue raised in Boise's appeal—whether the board was entitled to summary judgment. As noted, the trial court granted the board's motion based on its argument that Boise was estopped or precluded from demonstrating futility now, because it should have done so when it was litigating the administrative case, *Boise I*. For the following reason, we accept the board's concession that the trial court erred in granting its motion for summary judgment based on "issue preclusion." Issue preclusion applies when:

> "1.   The issue in the two proceedings is identical.
>
> "2.   The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
>
> "3.   The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
>
> "4.   The party sought to be precluded was a party or was in privity with a party to the prior proceeding.
>
> "5.   The prior proceeding was the type of proceeding to which this court will give preclusive effect."

*Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (citations omitted).

The problem here is with the first criterion. *Boise I* concerned the validity of a state administrative rule that, in turn, referenced the need for an ITP from the federal government. 131 Or App at 554-55. While Boise certainly attempted to litigate aspects of "takings" in *Boise I*, it was seeking to have the portion of the administrative order that discussed regulatory takings declared invalid. *Id.* It was not, in the administrative proceeding, seeking just compensation for a taking by inverse condemnation. Thus, it did not, and was

not required to, litigate whether such an inverse condemnation was "ripe" or whether an application for an ITP would have been "futile."[4]

Finally, we address the board's argument that the trial court, although stating that it was granting summary judgment on the basis of "issue preclusion," also granted the board's motion for summary judgment because Boise "failed to present sufficient evidence of futility to raise a factual issue and avoid summary judgment." We disagree with the board's characterization of the trial court's ruling. The board's motion for summary judgment simply did not attempt to put Boise's evidence to the test on that point. As noted above, the board's summary judgment argument was that Boise, as a matter of law, was precluded from *making* a futility showing—it did not argue that Boise could not, as a matter of fact, actually *show* futility. Thus, we reject the board's argument that it was entitled to summary judgment based on the sufficiency—or lack thereof—of Boise's evidence of futility.

The only remaining question, then, is whether the trial court erred in denying Boise's motion for summary judgment. That motion—in contrast to the board's motion—did raise the issue of whether Boise's evidence demonstrated that it was entitled to judgment as a matter of law on the board's ripeness defense because applying for an ITP would have been futile. We conclude that Boise's evidence was not sufficient to entitle it to summary judgment on that point.

As an initial matter, we point out that, in evaluating Boise's motion for summary judgment, we view the evidence in the light most favorable to the opposing party, the board. ORCP 47C; *see Jones v. General Motors Corp.*, 325 Or 404, 939 P2d 608 (1997). In light of that standard of review, many of Boise's arguments make little sense. Boise seems to be asserting that, in order to avoid summary judgment in Boise's favor, the board was required to show that "in 1993,

---

[4] We note, moreover, that "futility" is a response to a "ripeness" defense. The board has not asserted here that it raised any sort of ripeness defense in *Boise I*. Thus, the board also has not demonstrated that "futility" was an issue that was "essential to a final decision on the merits in the prior proceeding." *Nelson*, 318 Or at 104.

the USFWS would have granted Boise an ITP" and that, "if an ITP had been issued, the board would have exercised its discretion and authorized the logging." Boise also suggests that "futility" is evaluated based on a "more likely than not" or "preponderance of the evidence" standard. Thus, Boise suggests, if the evidence demonstrates that it is more likely than not that the USFWS would have denied its application for an ITP in 1992 or 1993, then Boise was entitled to summary judgment as a matter of law. Boise's assertions demonstrate a fundamental misunderstanding not only of the "futility" doctrine, but of burdens of proof and the summary judgment process.

It is the plaintiff, not the defendant, who bears the burden of demonstrating futility. *See, e.g., Curran v. ODOT*, 151 Or App 781, 788, 951 P2d 183 (1997) ("To prevail on a futility argument, plaintiffs had to submit evidence that would support a finding that there were no other reasonable locations for an access road."). Moreover, a plaintiff seeking summary judgment on a ripeness defense based on its evidence of futility must demonstrate that there is no genuine issue of material fact that the further actions that the defendants are contending are necessary for ripening of a claim would have been futile. It is at least possible that Boise could be said to have met such a standard if it were correct that futility can be established with evidence that it is "more likely than not" that USFWS would have denied an application for an ITP in 1992 or 1993. However, Boise cites no authority, and we are aware of none, that stands for the proposition that the test for futility is indeed that it is "more likely than not" that an application would have been denied.

Case law from the United States Supreme Court concerning the futility exception to the ripeness doctrine has not specified in great detail the quantum of evidence required to establish futility. However, that case law, as well as the plain meaning of the word "futile," lead to a conclusion that futile does not equate to "more likely than not." The common meaning of the word "futile" is "serving no useful purpose : INEFFECTIVE, FRUITLESS." *Webster's Third New Int'l Dictionary* 925 (unabridged ed 1993). "Futility" is defined as "an abortive attempt or useless gesture." *Id.* The Court's most recent pronouncement on the subject, in *Palazzolo v.*

*Rhode Island*, 533 US 606, 626, 121 S Ct 2448, 150 L Ed 2d 592 (2001), was that "federal ripeness rules do not require the submission of further and futile applications with other agencies." An examination of the facts of that case sheds light on what the Court meant by the word "futile." In *Palazzolo*, a landowner owned property that, under state law, was considered protected wetland on which filling was prohibited. 533 US at 614. There existed an exception only if a "compelling public purpose" would be served by the filling. *Id.* A state agency denied the landowner's proposed use, finding that it did not satisfy the "compelling public purpose" standard. In rejecting the board's argument that the landowner's claim was not ripe because he had not submitted applications for other types of development on the land, the Court stated:

> "On the wetlands there can be no fill for any ordinary land use. There can be no fill for its own sake; no fill for a beach club, either rustic or upscale; no fill for a subdivision; no fill for any likely or foreseeable use. And with no fill there can be no structures and no development on the wetlands. Further permit applications were not necessary to establish this point."

*Id.* at 621. In sum, further applications under those circumstances would have been futile because the state law in question allowed for only one exception, for a "compelling public purpose," and the board already had determined that that exception did not apply. Thus, "futile," as used by the Court in *Palazzolo*, meant "serving no useful purpose." *Webster's* at 925.

A comparison of *Palazzolo* to *Williamson Planning Comm'n v. Hamilton Bank*, 473 US 172, 105 S Ct 3108, 87 L Ed 2d 126 (1985), is instructive. That case also concerned ripeness. There, a developer was attempting to develop a residential subdivision for which its predecessor had received a preliminary approval from local government. *Williamson Planning Commission*, 473 US at 177. Over the next few years, parts of the proposed development were given final approval and built. *Id.* at 178. In light of mistakes discovered in the original preliminary approval, the local government asked the developer to submit a revised preliminary plat. The local government rejected the revised plat on the ground that it did not comply with various ordinances and regulations. *Id.*

at 180-81. The developer then brought an action pursuant to 42 USC section 1983, alleging a taking without just compensation. The Court held that the developer's claim was not ripe:

> "[R]espondent did not then seek variances that would have allowed it to develop the property according to its proposed plat, notwithstanding the Commission's finding that the plat did not comply with the zoning ordinance and subdivision regulations. It appears that *variances could have been granted* to resolve at least five of the Commission's eight objections to the plat."

*Williamson Planning Commission*, 473 US at 188 (emphasis added). The Court rejected the developer's argument that denial of approval of the plat "was equivalent to a denial of variances." *Id.* It noted that the regulations in question clearly stated that "any condition shown on the plat which would require a variance will constitute grounds for disapproval of the plat." *Id.* at 189. The Court concluded:

> "Thus, in the face of respondent's refusal to follow the procedures for requesting a variance, and its refusal to provide specific information about the variances it would require, respondent hardly can maintain that the Commission's disapproval of the preliminary plat was equivalent to a final decision that no variances would be granted."

*Id.* at 190. Thus, in *Williamson Planning Commission*, there was no "futility" exception to the ripeness requirement because it appeared to the Court that "variances *could* have been granted" that would have allowed the development to occur. 473 US at 188. The Court did not speculate on whether it was "more likely than not" that such variances *would* be granted. *See also Suitum v. Tahoe Reg. Plan. Agency*, 520 US 725, 740, 117 S Ct 1659, 137 L Ed 2d 980 (1997) (regulatory taking claim was ripe where "little or no uncertainty" remained as to the value of the petitioner's "transferable development rights"); *MacDonald, Somers & Frates v. County of Yolo*, 477 US 340, 352, 106 S Ct 2561, 91 L Ed 2d 285 (1986) (taking claim was not ripe where there was "le[ft] open the possibility that some development will be permitted").

In sum, while the Court's cases do not precisely quantify futility, the Court has found futility where development required filling but, under the laws, there could be "no fill for any likely or foreseeable use," *Palazzolo*, 533 US at 621, and where there was "little or no uncertainty" as to the value of certain development rights, *Suitum*, 520 US at 740; but *not* where there was left open "the possibility of some development," *MacDonald*, 477 US at 352; or where "variances could have been granted" that might have permitted development, *Williamson Planning Commission*, 473 US at 188. Synthesizing the holdings in those cases, we conclude that, where there remains an unexplored *possibility* under the regulations in question that development can occur, a claim is not ripe and the "futility" exception will not apply unless the party claiming futility can show that there was very little likelihood—or no likelihood—that the development would have been approved had that party taken further steps to obtain approval.

With that standard in mind, we examine the exhibits that Boise submitted in support of its claim for summary judgment on the state's ripeness defense. Most of the exhibits simply are not relevant in any significant way to the question before us. Many contain bits and pieces of pleadings and arguments made in several other cases concerning timber harvesting. Those isolated excerpts do not in any way shed light on whether Boise could have obtained an incidental take permit from USFWS in 1992 or 1993 for harvesting timber in the Walker Creek Unit. Boise also submitted excerpts from an action it brought in federal court, apparently in 1998, in an effort to obtain an advisory opinion from USFWS as to whether it would be in violation of the Endangered Species Act were it to log the Walker Creek Unit.[5] The material submitted demonstrates nothing except that, as early as 1998, the USFWS had not taken a position on whether such a project would violate the act. Particularly in light of the fact that

---

[5] As noted above, by that point in time, the board was no longer taking the position that the unit should not be logged. By 1998, the owls that were present in 1992 and 1993 were no longer on the site. It appears, however, that later litigation between Boise and USFWS about the Walker Creek Unit may have concerned the presence of another owl found dead on the site long after the events at issue in this case. *See generally Boise Cascade Corp. v. United States*, 296 F3d 1339 (Fed Cir 2002).

Boise did not actually apply for an ITP until November 1998,[6] we conclude that that material simply is not relevant to determining the likelihood of Boise receiving an ITP in 1992 or 1993.

Two remaining exhibits submitted by Boise in support of its motion for summary judgment merit discussion. The first is a document labeled "Procedures Leading to Endangered Species Act Compliance for the Northern Spotted Owl, US Fish and Wildlife Service, Region 1, July 1990." Boise does not dispute that those guidelines were rescinded in 1992, before the controversy at issue here arose, but appears to maintain that the USFWS *might* have continued to rely on them. Those guidelines appear to relate primarily to planned and proposed sales of timber on federal lands. They contain numerous recommendations, only one of which is relevant here: "[I]f incidental take is identified as a concern on state or private lands, individual landowners should consider development of a habitat conservation plan." The document says nothing about the likelihood of the issuance of ITPs in any particular circumstances. While the recommendations do reflect a general concern for preservation of spotted owl habitat, even assuming that USFWS continued to consult those guidelines after they were rescinded, they do not provide any basis for speculating on whether a private landowner's application for an ITP would have been successful in 1992 or 1993. The other exhibit is part of a document entitled "Recovery Plan for the Northern Spotted Owl—Draft," dated April 1992. The pages of the draft submitted by Boise detail a decline in northern spotted owl habitat in western Oregon. Again, while the draft expresses USFWS's concern for preserving owl habitat, it does not provide information pertaining to the likelihood of Boise obtaining an ITP.

We thus conclude that Boise was not entitled to summary judgment as a matter of law on the board's ripeness defense. In sum, neither party was entitled to summary judgment based on the theories that each advanced and on the exhibits submitted to the trial court.

Summary judgment in favor of defendant reversed and remanded.

---

[6] USFWS indicated that Boise could proceed with the logging in July 1999.