Argued and submitted January 10, 1996, decision of the Court of Appeals affirmed
April 10, 1997

## BOISE CASCADE CORPORATION,
A Delaware corporation,
*Respondent on Review,*

*v.*

## BOARD OF FORESTRY,
*Petitioner on Review.*

(92-DOF-007, 93-DOF-002; CA A78968 (Control),
A79458; SC S42047)

935 P2d 422

Virginia L. Linder, Solicitor General, Salem, argued the cause for petitioner on review. With her on the briefs were Theodore R. Kulongoski, Attorney General, and John T. Bagg, Assistant Attorney General.

Phillip D. Chadsey, of Stoel Rives Boley Jones & Grey, Portland, argued the cause for respondent on review. With him on the briefs was Charles F. Adams.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, and Durham, Justices.**

GILLETTE, J.

---

** Unis, J., retired June 30, 1996, and did not participate in this decision; Graber, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

This administrative case involves two petitions for judicial review of two final orders of the Board of Forestry (the Board). The first order denied Boise Cascade's (Boise Cascade) plan to log approximately 64 acres of timber that it owns. The second order imposed a temporal restriction on Boise Cascade's plan to log four specific acres of the 64-acre unit. The State of Oregon, through the Board of Forestry, asks this court to reverse a decision of the Court of Appeals that relied on its decision in a companion case, *Boise Cascade Corp. v. Board of Forestry (A79626)*, 131 Or App 538, 886 P2d 1033 (1994) (*Boise I*), and affirmed both the Board's orders. *Boise Cascade Corp. v. Board of Forestry (A78968)*, 131 Or App 552, 886 P2d 1041 (1994) (*Boise II*). At issue is whether an agency that has promulgated an administrative rule has jurisdiction to determine whether the application of that rule to a particular set of facts effected a "taking," as that term is used in the constitutional sense. We conclude that the agency has jurisdiction to make that determination. Consequently, we affirm.

### FACTS

In February 1992, Boise Cascade filed a proposal with the Oregon Department of Forestry (the Department) to log a 64-acre parcel of Boise Cascade's land (the Walker Creek Unit).[1] The land contains northern spotted owl nests and is subject to the northern spotted owl protection provisions of OAR 629-24-809, which the Board adopted in 1990.[2]

---

[1] The relationship between the Board of Forestry, the State Department of Forestry, and the State Forester is set forth in *Boise Cascade Corp. v. Board of Forestry (S42159)*, 325 Or 188 n 4, 935 P2d 411 (1997).

[2] OAR 629-24-809 provides, in part:

"(1) Whenever the State Forester determines that an operation will conflict with protection of a nesting site of the northern spotted owl * * *, the operator must obtain the State Forester's approval of a written plan before commencing the operation. The written plan, at a minimum, must address how the operation will be conducted to provide for the following:

"(a) A 70 acre area of suitable spotted owl habitat encompassing the nest site, to be maintained as suitable spotted owl habitat;

"(b) Prevention of disturbances resulting from operation activities which cause owls to flush from the nesting site. Such disturbances must be prevented during the critical period of use for nesting. The critical period of use is the time period between March 1 and September 30, each year."

The Department denied the proposal on the ground that the logging plan did not provide sufficient protection for spotted owl habitat, as required by OAR 629-24-809.

In May 1992, Boise Cascade submitted an amended logging plan. The Department again denied the proposal, pursuant to OAR 629-24-809, but advised Boise Cascade that eight specified acres of the Walker Creek Unit *could* be logged, if the logging did not take place between March 1 and September 30, 1992 (which was the critical period of use), or until any young northern spotted owls in the parcel fledged. Boise Cascade sought review of that decision by the Board, arguing, *inter alia*, that application of OAR 629-24-809 in a way that kept it from logging its Walker Creek Unit property resulted in a "taking" under the state and federal constitutions.

On January 15, 1993, the Board rejected Boise Cascade's challenge and entered a final order denying Boise Cascade's logging plan of the 64 acres. With respect to Boise Cascade's "takings" argument, the Board stated:

> "Boise Cascade appears to have been undecided as to the appropriate time to advance this argument. Although it asserts * * * that such an argument is not premature, it did not at hearing attempt to present evidence that any 'taking' had in fact occurred. * * * Certainly[,] there is an inadequate factual basis upon which to advance any claim of a constitutional taking."

On February 1, 1993, Boise Cascade filed an inverse condemnation action in Clatsop County Circuit Court, alleging that the Board's application of its administrative rule constituted a "taking" under Article I, section 18, of the Oregon Constitution, and under the Fifth Amendment to the United States Constitution.[3] (*Boise I*).

---

[3] Article I, section 18, of the Oregon Constitution, provides:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor except in the case of the state, without such compensation first assessed and tendered[.]"

The Fifth Amendment to the United States Constitution provides, in part:

"No person shall * * * be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

On February 22, 1993, Boise Cascade submitted a plan to log four of the eight acres that the Department previously had agreed could be harvested. On March 8, 1993, the Department approved Boise Cascade's plan, subject to a condition that the logging not begin until October 1, 1993, and end by March 1, 1994, when no nesting would take place. Boise Cascade appealed that temporal restriction to the Board and argued, *inter alia*, that the temporal restriction also constituted a temporary "taking" under the state and federal constitutions.

On March 17, 1993, Boise Cascade petitioned the Court of Appeals for judicial review of the Board's January 15, 1993, order. (*Boise II*).

On April 19, 1993, the Board rejected Boise Cascade's challenge to the temporal restriction concerning the four acres and entered a second final order. In that order, the Board *did not address* the "takings" issue. Rather, the Board stated that "[t]he issue of whether there is a taking would more properly be [addressed] in a court of competent jurisdiction, once administrative remedies are exhausted."

On April 22, 1993, Boise Cascade filed a supplemental complaint in the circuit court action, alleging that the separate temporal restriction on logging the four acres constituted a separate "taking." (*Boise I*).

On April 26, 1993, Boise Cascade filed a second petition for judicial review, seeking review of the Board's April 19, 1993, order that refused to remove the temporal condition on logging of the four acres. The Court of Appeals consolidated the two judicial review proceedings. (*Boise II*).

In May 1993, the circuit court granted the state's motion to dismiss the entire inverse condemnation claim on the grounds that the court lacked subject matter jurisdiction over the dispute, that the action was not ripe, and that the complaint failed to state a claim. Boise Cascade appealed the circuit court's ruling to the Court of Appeals. (*Boise I*).

---

The Takings Clause of the Fifth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Nollan v. California Coastal Comm'n*, 483 US 825, 827, 107 S Ct 3141, 97 L Ed 2d 677 (1987).

In *Boise II*, the Court of Appeals held that the Board and the circuit court have *concurrent* jurisdiction over Boise Cascade's "takings" claims. The Court of Apeals rejected Boise Cascade's argument that "the circuit court had exclusive jurisdiction over the takings questions and that the board's orders are invalid insofar as they address those questions at all or reach the conclusion that the regulatory decisions in the orders do not occasion a taking." *Boise II*, 131 Or App at 554. The Court of Appeals reasoned:

> "[W]e held in the companion case [*Boise I*] that the board does not have exclusive authority to decide the takings questions and that the circuit court retains jurisdiction over those questions and over the inverse condemnation action. However, we did not suggest that it would be reversible error for the board to discuss or even mention the takings issues in its orders here. Whether the board has *any decisional* authority concerning those issues—a question we do not have to decide in this or the companion case—its discussion of the issues is surplusage at worst."

*Boise II*, 131 Or App at 555 (emphasis in original; footnote omitted).

The Court of Appeals rejected the Board's argument that the cases should be remanded to the Board, stating:

> "The board's suggestion that we remand the takings issues to it is not within the scope of the relief that Boise Cascade seeks under its petitions; Boise Cascade contends that the board lacks jurisdiction over the issues. Assuming without deciding that the board could have sought a remand by cross-petitioning from its own orders, it did not do so. Under ORS 183.482(6), the board could have unilaterally withdrawn and reconsidered the orders at any time before the time set for the hearing in this court. The board also did not do that."

*Boise II*, 131 Or App at 555-56. The Court of Appeals then concluded that neither Boise Cascade nor the Board "has presented a cognizable and reviewable basis for disturbing the orders." *Id.* at 556. The Court of Appeals affirmed the Board's orders. *Ibid.*

The state petitioned for review of the Court of Appeals' treatment of the jurisdictional issue, and we allowed review.

Before we address the state's jurisdictional argument, we first must address a threshold issue.

■ If an agency exercises its concurrent jurisdiction in a particular way and then subsequently chooses *not* to exercise its concurrent jurisdiction, then the agency must explain its inconsistent actions under ORS 183.482(8)(b)(B).[4]

■ In this case, the Board exercised its concurrent jurisdiction and considered the "takings" issue in its first order. In its second order, the Board determined that it lacked jurisdiction to decide the "takings" issue. The Board's unexplained and inconsistent treatment of the "takings" issue, generally, might merit remand under ORS 183.482(8)(b)(B). However, Boise Cascade did not assign that issue as error on judicial review and, therefore, we do not remand to the agency under ORS 183.482(8)(b)(B).

■ On review in this court, the state seeks reversal of the Court of Appeals' decision concerning the primary jurisdiction issue in *Boise II*. The state is raising the same jurisdictional argument that it raised in *Boise I*. Contrary to the state's assertion, the Board neither has primary nor exclusive jurisdiction to decide the "takings" issue. The Board shares concurrent jurisdiction with the circuit court over "takings" claims. *See Boise Cascade Corp. v. Board of Forestry (S42159)*, 325 Or 185, 935 P2d 411 (1997).

■ Because its jurisdiction was concurrent, the Board had discretion either to consider or not to consider a "taking" theory that was advanced to it in a contested case. As noted, the Board exercised its discretion differently in the two cases. As further noted, however, Boise Cascade makes no issue of the inconsistency. There thus is no remaining cognizable

---

[4] ORS 183.482(8)(b)(B) provides:

"The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(B) *Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency*[.]"

(Emphasis added.)

challenge to the Board's discretionary choice in either administrative proceeding. It follows that the Court of Appeals' decision affirming the Board's actions was not legally wrong. It is affirmed.

The decision of the Court of Appeals is affirmed.