Argued and submitted August 30, reversed on cross-appeal; appeal dismissed as moot December 27, 2006, petition for review denied April 10, 2007 (342 Or 633)

Marsha SEIBER
and Alvin Seiber,
*Appellants - Cross-Respondents,*

*v.*

STATE OF OREGON,
by and through the
BOARD OF FORESTRY,
*Respondent - Cross-Appellant.*

010333; A127237

149 P3d 1243

Philip D. Chadsey argued the cause for appellants - cross-respondents. With him on the briefs were Charles F. Adams and Stoel Rives LLP.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent - cross-appellant. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Chief Judge, and Schuman and Rosenblum, Judges.

SCHUMAN, J.

## SCHUMAN, J.

In 1994, the Oregon Board of Forestry denied plaintiffs' application to harvest timber from 40 acres located within a 200-acre parcel that they owned. The denial resulted from application of a rule protecting spotted owl nesting sites. Plaintiffs brought claims against the state and the board, seeking compensation for a "taking" under Article I, section 18, of the Oregon Constitution,[1] and the Fifth and Fourteenth Amendments to the United States Constitution.[2] The jury returned a verdict in plaintiffs' favor. Plaintiffs appeal, assigning error to the amount of attorney fees that the trial court awarded them. The state cross-appeals, assigning error to the trial court's denial of its motions for directed verdicts on the takings claims under the federal and state constitutions. We agree with the state that the trial court should have granted its motions for directed verdicts. We therefore reverse on the cross-appeal. Because plaintiffs are no longer the prevailing party, they are not entitled to any attorney fees. We therefore dismiss the appeal as moot.

The following facts are not in dispute. Plaintiffs acquired approximately 200 acres of land near Sweet Home, Oregon, in 1986. Almost all of the property was commercial timberland, although there was a residence on it as well. In 1993, a spotted owl nesting site was identified on land adjacent to plaintiffs' parcel. An Oregon Department of Forestry rule provides for the protection of 70 acres around such a site. *Former* OAR 629-24-809 (June 6, 1991), *renumbered as* OAR 629-665-0210 (June 1, 1997). The protected area included 40 acres of plaintiffs' parcel. Thus, beginning in January 1994, plaintiffs were prohibited from logging on those 40 acres. The prohibition did not prevent them from logging the remaining portion of their parcel.

---

[1] Article I, section 18, of the Oregon Constitution provides, in part:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation[.]"

[2] The Takings Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, *see Chicago, B. & Q. R. Co. v. Chicago*, 166 US 226, 17 S Ct 581, 41 L Ed 979 (1897), provides that "private property" shall not "be taken for public use, without just compensation."

In 1998, plaintiffs brought a claim against the state, alleging that application of the spotted owl regulation had resulted in a taking of their property and that they were therefore entitled to compensation. The court dismissed their claim, however, on the ground that it was not ripe for adjudication because they had not attempted to obtain an "incidental take permit" from the United States Fish and Wildlife Service. *See Boise Cascade Corp. v. Board of Forestry*, 164 Or App 114, 128-33, 991 P2d 563 (1999) (requiring exhaustion of administrative remedies before takings claim is ripe). Plaintiffs then made such an application, and, when it was denied, filed the present action in February 2001. In August 2001, before the litigation was complete, the nesting site was deemed abandoned, and the state withdrew the restriction. Plaintiffs then amended their complaint to allege a temporary taking instead of a permanent one.

At trial, plaintiffs argued that the state's denial of logging permits constituted a "regulatory taking" under Article I, section 18, of the Oregon Constitution, because it denied them economic use of the protected 40 acres within their 200-acre parcel. Plaintiffs relied on this court's opinion in *Coast Range Conifers v. Board of Forestry*, 189 Or App 531, 550, 76 P3d 1148 (2003), *rev'd*, 339 Or 136, 117 P3d 990 (2005), which rejected the so-called "whole parcel" rule and held that, in order to determine whether a regulation deprived a landowner of all economically viable use of property so as to constitute a taking under Article I, section 18, the appropriate "property" to examine was the affected portion of a landowner's parcel.

Plaintiffs also sought relief under the federal Takings Clause. They invoked *Penn Central Transp. Co. v. New York City*, 438 US 104, 130-31, 98 S Ct 2646, 57 L Ed 2d 631 (1978) (*Penn Central*), under which the question of whether a government regulation amounts to a taking depends on the particular circumstances of each case; *Lucas v. South Carolina Coastal Council*, 505 US 1003, 1015, 112 S Ct 2886, 120 L Ed 2d 798 (1992), under which a taking occurs when government has deprived a claimant of all economically productive use of property; and *Agins v. Tiburon*, 447 US 255,

260, 100 S Ct 2138, 65 L Ed 2d 106 (1980), under which a regulation will be held to violate the Takings Clause if the regulation "does not substantially advance legitimate state interests."

The state moved for directed verdicts on the state and federal claims. The trial court denied the motions, the claims went to the jury, and the jury returned a verdict in favor of plaintiffs. The court entered a judgment awarding plaintiffs $148,473 plus attorney fees in the amount of $211,333. This appeal and cross-appeal ensued.

■ While the appeal and cross-appeal were pending, the Oregon Supreme Court decided *Coast Range Conifers v. Board of Forestry*, 339 Or 136, 117 P3d 990 (2005), reversing this court's decision in that case and holding that the "whole parcel" rule *does* apply to a takings claim under Article I, section 18, of the Oregon Constitution. That rule now provides the starting point for evaluating whether a regulation's effect is so great as to constitute a taking. *Coast Range Conifers*, 339 Or at 150. The rule is straightforward: "Under Article I, section 18, of the Oregon Constitution, a court should consider a property owner's ability to use the whole parcel that he or she owns in determining whether the property retains any economically viable use." *Id.* Where a plaintiff owns a contiguous parcel, the court must consider the plaintiff's ability to use the entire parcel, "not merely the * * * acres of timber that the regulation affects." *Id.* Simply put, where the parcel considered as a whole retains some economically viable use, "the challenged regulation does not effect a taking under Article I, section 18, of the Oregon Constitution." *Id.* at 151.

Based on that principle, the court in *Coast Range Conifers* affirmed summary judgment in favor of the state on an Article I, section 18, takings claim that presented facts substantially similar to the ones here. In that case, the state Board of Forestry denied the plaintiff a permit to log nine acres of a contiguous 40-acre parcel after bald eagles, a protected species, were discovered on the property. It was undisputed that the challenged regulation left the "plaintiff able to log more than three fourths of its property." *Coast Range Conifers*, 339 Or at 151. In light of those facts, and applying

the whole parcel rule, the court held that the trial court correctly concluded that the state was entitled to prevail as a matter of law. *Id.*

■ Similarly, in this case, plaintiffs retained economic use of their contiguous 200-acre parcel despite the temporary prohibition against logging the 40 acres that had been subject to state regulation. Plaintiffs' counsel conceded to the trial court, "We'll stipulate that [plaintiffs] were not denied all economic value of the 200 acres." Because the state did not deprive plaintiffs of all economically viable use of the entire parcel, the trial court erred in denying the state's motion for a directed verdict on plaintiffs' claim under Article I, section 18.

■ The trial court also erred in denying the state's motion for a directed verdict on defendant's federal claim, which, as noted above, had three counts. The count based on *Agins* fails, because that case was overruled in *Lingle v. Chevron U.S.A., Inc.*, 544 US 528, 540-45, 125 S Ct 2074, 161 L Ed 2d 876 (2005). The count based on *Lucas* also fails because, under that case, no taking occurs unless the application of the state regulation renders claimant's entire parcel devoid of all economic value. *Lucas*, 505 US at 1015; *Coast Range Conifers*, 339 Or at 152; *see also Penn Central*, 438 US at 130-31 ("whole parcel" rule applies to regulatory takings); *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 US 302, 331, 122 S Ct 1465, 152 L Ed 2d 517 (2002) (same); *Concrete Pipe & Products of Cal, Inc. v. Construction Laborers Pension Trust for Southern Cal*, 508 US 602, 644-45, 113 S Ct 2264, 124 L Ed 2d 539 (1993) (same).

■ ■ The third federal count—the one based on *Penn Central*—requires a bit more discussion. The parties agree that, even if a claimant has no claim under *Lucas* because some economic value remains despite the regulation, the claimant may still have a *Penn Central* claim. *See Tahoe-Sierra Preservation Council, Inc.*, 535 US at 335 (temporary regulatory taking requires *ad hoc* examination of relevant factors). According to *Penn Central*, whether a regulation effects a taking depends in large part on

"several factors that have particular significance. The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations. So, too, is the character of the governmental action. A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good."

438 US at 124 (citations omitted). Where the historical facts material to the regulatory takings claim are undisputed, whether a regulation has effected a taking with respect to a particular plaintiff is a question of law to be resolved by the court. *Coast Range Conifers*, 339 Or at 155 (*"Penn Central* makes clear that the question whether the undisputed historical facts establish that a challenged regulation effects a taking presents a question of law for the court.").

We therefore begin our *Penn Central* analysis by recapitulating the relevant undisputed historical facts. The interference with plaintiffs' use of the entire 200 acre-parcel was limited in area, time, and interest; it affected only 40 of plaintiffs' 200 acres, it lasted only seven years, and it applied only to one "stick" in plaintiffs' "bundle" of property rights, that is, the right to harvest timber. During the period when the restriction was in place, plaintiffs were permitted to log elsewhere on the approximately 200-acre parcel, and they were free to sell future contingent logging interests in the regulated area. Moreover, although plaintiffs had plans to sell timber from the regulated area in the future, at the time the permit was denied, the state's action did not interfere with any then-existing transactions between plaintiffs and others to log the regulated area. *See Penn Central*, 438 US at 130 ("[T]he submission that appellants may establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development is quite simply untenable.").

Plaintiffs emphasize that, in addition to those undisputed historical facts, the jury made additional relevant findings. The jury returned the following "jury interrogatories":

"Question 1: Were the plaintiffs denied all economically viable or productive use of the subject 40 acres of timber while the ban on harvesting it was in effect? [Answer:] Yes.

"Question 2: Did the subject regulation advance a legitimate state interest:

"(a) In that regard, did it single out the plaintiffs to bear a burden that should be borne by the public as a whole? [Answer:] Yes.

"(b) Did it require plaintiffs to provide nesting habitat if they were not a cause of the spotted owl being listed as a species threatened with extinction? [Answer:] Yes.

"Question 3: When compared with the plaintiffs' right to make economic productive use of the property, including their reasonable investment-backed expectations, was it necessary for the State to prevent them from harvesting 40 acres of their timber for a period of seven years in order to ensure the survival of the spotted owl as a species? [Answer:] No.

"Question 4: What was the fair market value of the subject 40 acres of timber in January 1994? [Answer:] $333,000.

"Question 5: What was the fair market value of the subject 40 acres of timber in August 2001? [Answer:] $258,000."

The jury's answers to questions 1, 4, and 5 are, indeed, findings of historical fact that are supported by evidence in the record. In light of the "whole parcel" rule, however, the answers to those questions are of limited relevance because they do not call on the jury to consider the use of the 40 acres, or its loss of value, in the context of plaintiffs' entire 200 acres. Question 2, by its phrasing, applies to plaintiffs' *Agins* claim, which, we have decided, cannot survive *Lingle*. In any event, part (a) of question 2 does not ask for a determination of historical fact. By asking whether plaintiffs' burden "should" have been borne by the public, the question asks for a legal conclusion or, at the most, a finding of ultimate (as opposed to historical) fact. Part (b) of question 2 is, of course, undisputable: nobody ever asserted that plaintiffs are responsible for the endangered status of the spotted owl.

Question 3, like question 2(a), does not call for a finding of historical fact; rather, it requires the jury to weigh the plaintiffs' economic harm, including their investment-backed expectations, against the public benefit to be derived from the survival of the spotted owl as a species. That is precisely the legal issue that the court must decide based on undisputed historical facts. *Coast Range Conifers*, 339 Or at 155.

We turn, then, to that issue. We conclude, and plaintiffs do not contend to the contrary, that the regulation affecting plaintiffs' interests does not effect a physical appropriation of plaintiffs' property; rather, it is part of a "public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 US at 124. The rule authorizing the state's action is part of a regulatory plan developed to ensure maintenance of forestland "consistent with sound management of * * * wildlife resources and scenic resources * * * and to ensure the continuous benefits of those resources for future generations of Oregonians." ORS 527.630(1). Therefore, the character of the government action does not weigh heavily in plaintiffs' favor. *Penn Central*, 438 US at 124.

On the facts presented, viewed in light of the "whole parcel" rule that is now the governing principle in both Oregon and federal takings cases, we conclude that the temporary deprivation of logging rights to 20 percent of plaintiffs' property, pursuant to a statutory and regulatory plan to preserve resources for "future generations of Oregonians," was not a taking. The Supreme Court in *Coast Range Conifers* concluded that the *permanent* prohibition on logging nine acres of a 40-acre parcel—22.5 percent—under a regulatory scheme almost identical to the one that the state used in the present case, did not amount to a taking. 339 Or at 155. In this case, plaintiffs present an even less compelling set of circumstances.

Reversed on cross-appeal; appeal dismissed as moot.