Argued and submitted January 4, affirmed on appeal; reversed on cross-appeal December 5, 2007, petition for review denied March 26, 2008 (344 Or 390)

**BOISE CASCADE CORPORATION,**
a Delaware corporation,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

**STATE OF OREGON,**
by and through Board of Forestry,
*Defendant-Respondent*
*Cross-Appellant.*

Clatsop County Circuit Court
932018; A126743

174 P3d 587

Philip D. Chadsey argued the cause for appellant - cross-respondent. With him on the opening brief were Charles F. Adams and Stoel Rives LLP. With them on the reply brief was Michael B. Hallinan.

Denise G. Fjordbeck, Senior Assistant Attorney General, argued the cause for respondent - cross appellant. With her on the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Brendan C. Dunn, Assistant Attorney General.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Carson, Senior Judge.

BREWER, C. J.

---

* Brewer, C. J., *vice* Wollheim, J.

**BREWER, C. J.**

This inverse condemnation case comes to us with a substantial procedural history, an account of which is set out below. Following trial after the latest remand, a jury determined that the state had taken Boise Cascade Corporation's property in violation of the Fifth Amendment by temporarily prohibiting logging and that Boise should be compensated in the amount of $25. Boise appeals and the Oregon Board of Forestry (the state) cross-appeals. Because we agree with the state's arguments on cross-appeal, we reverse.

## I.  BACKGROUND

The historical and procedural facts relevant to our decision, which we take from the record and from the numerous opinions in earlier iterations of this case, are undisputed. Boise owns an approximately 65-acre parcel of timberland in Clatsop County known as the "Walker Creek Unit." Old growth timber of the kind found on the Walker Creek Unit is considered to be the best suitable habitat for northern spotted owls. In 1990, a pair of spotted owls was found nesting in a tree within the Walker Creek Unit. Also in 1990, the state adopted an administrative rule that required protection of a 70-acre core area of suitable habitat encompassing such nest sites.

In February 1992, Boise filed a proposal with the Department of Forestry to log the Walker Creek Unit; it filed an amended plan in May 1992. The state ultimately denied Boise's plan to harvest timber from a 56-acre portion of the Walker Creek Unit, but advised Boise that it could log—albeit with a temporal restriction—approximately eight acres of the unit. Boise initiated this action for inverse condemnation in early 1993, alleging that, by failing to approve its proposed plan, the state had "taken" the timber on the regulated 56 acres in violation of Article I, section 18, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. The trial court dismissed Boise's claims on the ground that it lacked subject matter jurisdiction and that Boise's complaint failed to state a claim. Boise petitioned

for judicial review of the order disapproving the timber harvest and appealed the trial court's dismissal of its inverse condemnation claim.

In the administrative review case, we rejected Boise's arguments concerning the validity of the administrative rule upon which the board based its decision and affirmed the order. *Boise Cascade Corp. v. Board of Forestry (A78968)*, 131 Or App 552, 886 P2d 1041 (1994), *aff'd*, 325 Or 203, 935 P2d 422 (1997) (*Boise I*). In the inverse condemnation case, we held that the trial court had erred in concluding that it lacked jurisdiction, and further held that Boise's then-operative complaint did state a claim under both Article I, section 18, and the Fifth Amendment. *Boise Cascade Corp. v. Board of Forestry (A79626)*, 131 Or App 538, 886 P2d 1033 (1994) (*Boise II*). On review of that decision, the Oregon Supreme Court agreed with this court that the trial court had jurisdiction and that Boise had stated a claim for a regulatory taking. *Boise Cascade Corp. v. Board of Forestry (S42159)*, 325 Or 185, 935 P2d 411 (1997) (*Boise III*).

On remand, Boise dismissed its claim under Article I, section 18, of the Oregon Constitution, choosing to pursue only its federal claim; that choice had important consequences, as will be seen below. The trial court granted Boise partial summary judgment, ruling as a matter of law that a regulatory taking under the Fifth Amendment had occurred. Around that time, one of the nesting owls died, the other left the Walker Creek Unit, and the board therefore lifted its restriction on Boise's logging of the site. Boise accordingly transformed its claim into a claim for a "temporary" taking. The issue of damages was tried to a jury, as was the question of whether a taking by "physical occupation" had occurred.[1] After a jury verdict in Boise's favor, awarding nearly $2 million in compensation, the state appealed.

In that appeal, the state argued that the trial court erred in failing to dismiss Boise's claim, in granting partial summary judgment, in striking the state's ripeness defense, and in numerous other respects. *Boise Cascade Corp. v. Board of Forestry*, 164 Or App 114, 116-18, 991 P2d 563

---

[1] Boise added the "physical occupation" claim after remand.

(1999), *rev den*, 331 Or 244 (2000), *cert den*, 532 US 923 (2001) (*Boise IV*). In *Boise IV*, we agreed with the state on two of its arguments. First, we agreed that the trial court had erred in submitting to the jury Boise's taking by "physical occupation" theory.[2] 164 Or App at 126. Second, we agreed that the trial court had erred in striking the state's defense that Boise's claim was not ripe because it had neither attempted to obtain an "incidental take permit" (ITP) from the federal government nor shown that attempting to obtain such a permit would have been futile. *Id.* at 128-32.[3] We also rejected Boise's argument that its trial exhibits demonstrated that it would have been futile to try to obtain an ITP. *Id.* at 133. We thus reversed the judgment in favor of Boise and remanded the case. *Id.*

On remand, both parties sought summary judgment on the question of ripeness and futility. Most of Boise's arguments in support of summary judgment were to the effect that this court's decision concerning ripeness and futility in *Boise IV* was wrong. The trial court rejected those arguments. Boise also argued in its motion for summary judgment, however, that it was entitled to judgment as a matter of law on the question of futility. The state, in its motion for summary judgment, asserted that it was too late, as a matter of law, for Boise to be able to demonstrate futility. The trial court granted the state's motion and denied Boise's motion. Once more, Boise appealed.

In that appeal, we addressed whether the trial court had correctly granted the state's summary judgment motion on the issue of ripeness. *Boise Cascade Corp. v. Board of Forestry*, 186 Or App 291, 63 P3d 598, *rev den*, 335 Or 578, *cert den*, 540 US 1075 (2003) (*Boise V*). The state conceded that it was not entitled to summary judgment on the theory of ripeness on which the trial court had relied. It argued, however, that Boise's claim was not ripe because

---

[2] *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 US 419, 102 S Ct 3164, 73 L Ed 2d 868 (1982) (describing taking by physical occupation).

[3] The administrative rule under which the state had denied Boise's harvesting plan allowed an exception to the requirement for protecting northern spotted owl nesting sites if the landowner had obtained an ITP pursuant to the federal Endangered Species Act.

"Boise, having dropped its claim under Article I, section 18, of the Oregon Constitution, cannot, as a matter of law, establish a violation of the Fifth Amendment to the United States Constitution. *See generally Suess Builders Co. v. City of Beaverton*, 294 Or 254, 656 P2d 306 (1982) (a federal takings claim does not ripen until the claim under Article I, section 18[,] has been decided)."

*Boise V*, 186 Or App at 296-97. We refused to address that argument, however, on the ground that it had not been preserved in the trial court. *Id.* at 297. We ultimately concluded in *Boise V* that Boise was not entitled to summary judgment on the state's ripeness defense and that, as discussed above, the state also was not entitled to summary judgment. *Id.* at 304. After generating five appellate opinions, the case was remanded for a third time.

Before the case went to trial on the most recent remand, the state moved for "a plenary re-trial of all jury questions, including liability and damages issues." The trial court granted the motion. Boise then filed alternative motions asking the trial court to reinstate its Article I, section 18, claim or to allow it to file an amended complaint (actually, what it called a "third supplemental amended complaint") including that claim. The trial court denied both motions, and the case went to trial.

After Boise rested, the state moved for a directed verdict; it also sought a directed verdict after it rested its own case. The trial court denied both motions. Ultimately, the jury, by special verdict, found that "it would have been futile for Boise Cascade Corporation to seek an incidental take permit from the US Fish & Wildlife Service prior to February 1, 1993." That is, the jury rejected the state's ripeness defense by finding that it would have been futile for Boise to seek an ITP. The jury awarded $25 as compensation for the temporary taking of Boise's property. The state moved for a judgment notwithstanding the verdict, while Boise moved to reinstate the earlier nearly $2 million verdict from 1997. The trial court denied both motions, and this appeal and cross-appeal followed.

On appeal, Boise makes three arguments presented as four assignments of error. It argues first that the trial

court should not have allowed a plenary retrial of all issues after our most recent remand. More specifically, Boise asserts that the trial court erred in granting the state's motion for a plenary retrial and in denying Boise's post-trial motion to reinstate the 1997 jury verdict. Next, Boise argues that the trial court erred in not awarding simple interest at the rate of nine percent from 1993 on the fair market value of the timber that it claims was taken. Finally, Boise assigns error to the trial court's denial of its motion to reinstate its regulatory takings claim under Article I, section 18, of the Oregon Constitution before the most recent retrial.

The state, in turn, asserts four assignments of error on cross-appeal. In related assignments, the state argues that the trial court erred in denying its motions for directed verdicts on Boise's temporary takings claim and on Boise's Fifth Amendment regulatory takings claim. The state also asserts that the trial court erred in denying its motion for a directed verdict on the ground that Boise had failed to exhaust remedies provided by state law before bringing a claim under the Fifth Amendment. Finally, the state assigns error to the trial court's denial of its motion for a directed verdict on the ground that it would not have been futile for Boise to pursue its administrative remedies before seeking a judicial remedy.

## II. DISCUSSION

### A. *Federal Regulatory Takings Principles*

We begin with an overview of the legal landscape in which federal takings claims are adjudicated. The Takings Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, *see Chicago, B. & Q. R. Co. v. Chicago*, 166 US 226, 17 S Ct 581, 41 L Ed 979 (1897), provides that private property shall not "be taken for public use, without just compensation." Early in the last century, the United States Supreme Court recognized that—in addition to an actual conversion of private property for governmental use—governmental regulation of private property could constitute a Fifth Amendment taking. *Pennsylvania Coal Co. v. Mahon*, 260 US 393, 43 S Ct 158, 67 L Ed 322 (1922). Thereafter, in *Penn Central Transp. Co. v. New York City*, 438 US 104, 124,

98 S Ct 2646, 57 L Ed 2d 631 (1978), the Court explained that, in engaging in the "essentially ad hoc, factual inquires" regarding whether governmental regulation constitutes a taking, courts should consider (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action. *Id.* at 124-25.

The Court has, however, recognized two categories of regulation that do not require the individualized, factual inquiry set out in *Penn Central*: regulation that "compel[s] the property owner to suffer a physical 'invasion' of his property" (which is not at issue in this appeal) and "regulation [that] denies all economically beneficial or productive use of land." *Lucas v. So. Carolina Coastal Council*, 505 US 1003, 1015, 112 S Ct 2886, 120 L Ed 2d 798 (1992).[4] As the Court more recently explained, "the categorical rule in *Lucas* was carved out for the 'extraordinary case' in which a regulation permanently deprives property of all value; the default rule remains that, in the regulatory takings context, we require a more fact specific inquiry." *Tahoe-Sierra P. Council v. TRPA*, 535 US 302, 333, 122 S Ct 1465, 152 L Ed 2d 517 (2002).

B.   *The "Whole Parcel" Rule*

In *Penn Central*, the Court set out what has come to be known as the "whole parcel rule":

> " 'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. * * * [T]his Court focuses rather on both the character of the action and on the nature and extent of the interference with rights in the parcel as a whole * * *."

438 US at 130-31. Although the *Lucas* Court appeared in *dicta* to question that rule, *see* 505 US at 1016-17 n 7, the Court also appeared to reaffirm the rule. *See* 505 US at 1019

---

[4] The *Lucas* Court cited *Loretto* for the first proposition, and *Agins v. Tiburon*, 447 US 255, 100 S Ct 2138, 65 L Ed 2d 106 (1980), for the second. As noted, Boise purported to assert a *Loretto* claim in its complaint, but we previously determined that Boise had not stated a claim under *Loretto*. That issue is not before us now.

("We think, in short, that there are good reasons for our frequently expressed belief that when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." (Emphasis in original.)).

In any event, as the Oregon Supreme Court has observed, the United States Supreme Court has, since *Lucas*, "reaffirmed the [whole parcel] rule twice." *Coast Range Conifers v. Board of Forestry*, 339 Or 136, 153, 117 P3d 990 (2005) (citing *Tahoe-Sierra*, 535 US at 331, and *Concrete Pipe v. Pension Trust*, 508 US 602, 644-45, 113 S Ct 2264, 124 L Ed 2d 539 (1993)).

In fact, in *Tahoe-Sierra*, the Court emphasized the vitality of the whole parcel rule in regulatory takings cases, explaining that it applies both to physical and temporal aspects of the landowner's property rights. That case involved a claim that a temporary taking of the petitioners' property—in the form of a temporary development moratorium—was subject to the *per se* rule of *Lucas*. The Court reiterated that the "categorical rule in *Lucas* was carved out for the 'extraordinary case' in which a regulation *permanently* deprives property of *all* value[.]" 535 US at 333 (emphasis added). In so stating, the Court rejected the petitioners' argument that a *per se*—that is, a *Lucas*-type—taking could be established by a regulation that imposed only a temporary restriction on a landowner's right to use its property. *See id.* at 321 ("[W]e conclude that the circumstances in this case are best analyzed within the *Penn Central* framework."). "[A] permanent deprivation of the owner's use of the entire area is a taking of 'the parcel as a whole,' " the Court explained, "whereas a temporary restriction that merely causes a diminution in value is not." *Id.* at 332.

The *Tahoe-Sierra* Court also reiterated the other, nontemporal aspects of the whole parcel rule. The Court repeated, for example, that "where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking." 535 US at 327 (quoting *Andrus v. Allard*, 444 US 51, 100 S Ct 318, 62 L Ed 2d 210 (1979)). Thus, after *Tahoe-Sierra*, it is clear that, under the "whole

parcel" rule, a *per se Lucas*-type regulatory taking cannot be premised on a governmental restriction that affects (1) only one portion of the owner's property, (2) only one type of interest within the property owner's "bundle" of interests, or (3) only one "temporal slice" of the property owner's fee interest.

C.  *Boise Neither Pleaded Nor Proved a* Per Se *Regulatory Taking*

In its first claim for relief in its complaint, Boise asserted that the state's actions entitled it to just compensation under Article I, section 18, of the Oregon Constitution. As noted above, Boise voluntarily dismissed that claim long before the latest trial in this case. Boise's second claim, denominated a *"Loretto* Per Se Claim" in the complaint, sought compensation on the theory that the state had physically occupied its property. In *Boise IV*, as noted above, we held that Boise had "not stated a claim for a 'physical occupation' taking under *Loretto.*" 164 Or App at 126. What remains, then, is what Boise's "second supplemental complaint" itself explicitly labels a *"Lucas* Per Se Claim."

On appeal, the state asserts, as it did in the trial court, that Boise neither pleaded nor proved a *per se* regulatory takings claim under *Lucas*. After Boise rested its case on retrial, the state moved for a directed verdict, arguing that

"the *Lucas* claim has to be about all economically viable use of the whole parcel of land. * * *

"* * * [The state] hasn't taken all economically viable uses of the whole parcel, which is what *Lucas* requires."

The state renewed its motion after it rested its own case:

"A *Lucas* claim has to be about the all economically viable use of the land, and in this case what we are talking about is logging, and if there is any question about that, we just need to look at * * * the Second Supplemental Complaint, paragraph 16, in which the allegation is, and it's one allegation in the *Lucas* claim, the Board's action in denying [Boise] the right to log its land deprived [Boise] of all economically productive use of its merchantable timber—not the land, the merchantable timber—and constituted a taking of [Boise's] property for a public purpose which requires

the [the state] to pay [Boise] just compensation for property under the takings clause of the Fifth and Fourteenth Amendments.

"So it's not about land, it's about one strand in that bundle of rights. You can't send—the State's position is you cannot send that kind of claim to the jury, Your Honor, on the evidence before it."

The state made a similar argument regarding the viability of Boise's temporary takings claim. In its initial motion for a directed verdict, the state argued that "the case should be dismissed because since *Tahoe-Sierra* was decided, you cannot have a *Lucas per se* claim, a categorical taking, that is temporary. And that's—we have—that's the proof that we have here is that [this is a] temporary taking under a *Lucas* claim." The trial court denied both motions, twice rejecting both arguments.

■    On appeal, citing *Lucas* and *Tahoe-Sierra*, the state asserts that the trial court erred in denying its motions for directed verdicts. The state observes that "a *Lucas* claim cannot be based on a portion of the property (56 of 65 or 1770 acres[5]), or on a single property interest (timber rather than the real property), or on a sliver of time (here, 45 months)." For the reasons discussed below, we agree that—for three independent reasons—Boise neither pleaded nor proved a takings claim under the Fifth Amendment Takings Clause.

"Upon review of a denial of a motion for a directed verdict, we will not set aside a jury verdict 'unless we can affirmatively say that there is no evidence from which the jury could have found the facts necessary to establish the elements of [the] plaintiff's cause of action.' "

*Conway v. Pacific University*, 324 Or 231, 235, 924 P2d 818 (1996) (quoting *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984)) (brackets in *Conway*). In this case, because the problems with Boise's case stem from its pleadings and the legal theory on which it relied, its proof suffered accordingly. That is, because the claim that Boise sought to prove was deficient, there is no evidence from which a jury

---

[5] The reference to 1,770 acres is to the larger parcel of real property that the Walker Creek Unit initially was a part of. We assume without deciding that the relevant denominator here is 56 acres.

could have found the facts necessary to establish the elements of a properly pleaded claim.

We begin with the portional aspect of the whole parcel rule. In *Coast Range Conifers*, the Oregon Supreme Court summarily rejected the plaintiff's *Lucas* claim based on only a portion of the parcel: "Under the whole parcel rule, plaintiff's *Lucas* claim fails. Plaintiff's ability to log 31 acres of the 40-acre parcel establishes that the regulation does not deprive plaintiff's property of all its economic value." 339 Or at 153. More recently, in *Seiber v. Oregon Board of Forestry*, 210 Or App 215, 149 P3d 1243 (2006), *rev den*, 342 Or 633 (2007), we addressed a temporary restriction on logging 40 acres out of a 200-acre parcel. Citing *Lucas* and *Coast Range Conifers*, we stated, "The count based on *Lucas* also fails because, under that case, no taking occurs unless the application of the state regulation renders claimant's *entire parcel* devoid of all economic value." *Id.* at 220 (emphasis added). In short, because Boise did not plead or prove that the state's regulation denied it use of the entire Walker Creek Unit, the trial court should have granted the state's motion for a directed verdict on that ground.

We also agree with the state that Boise's allegations regarding only one of its interests in the Walker Creek Unit were insufficient to state a claim. As noted above, Boise pleaded and sought to prove only that the regulation "deprived [it] of all economically productive use of its merchantable timber * * *." That is, Boise sought compensation only for deprivation of one "stick" in the bundle of rights it held in the Walker Creek Unit. But, as the Oregon Supreme Court recently explained, "Under Oregon law, * * * timber is part of the underlying real property unless it is subject to a contract to be cut." *Coast Range Conifers*, 339 Or at 150-51. Boise introduced no evidence that the timber for which it sought compensation was subject to a contract to be cut. It follows that the timber was not a property interest separate from the rest of the relevant parcel that could support an independent claim for a *per se* regulatory taking. *See Seiber v. U.S.*, 364 F3d 1356, 1369 (Fed Cir), *cert den*, 543 US 873 (2004) ("No authority has been brought to our attention that holds as a matter of federal takings law that trees are a separate property interest before they are severed from their

underlying land."). Under *Tahoe-Sierra*, a regulation that affects only one "strand" of the owner's interest in the property cannot constitute a *per se* regulatory taking.

Finally, we agree with the state on the third aspect of its argument: because Boise neither pleaded nor proved that it had been *permanently* deprived of all economic value in the Walker Creek Unit, it did not state a claim for a *per se* taking under *Lucas. See Boise V*, 186 Or App at 294 n 1 (describing holding in *Tahoe-Sierra*: "a temporary restriction that merely causes a diminution in value of property is not a taking of the parcel as a whole; property is not rendered valueless by a temporary prohibition on economic use because the property will recover value as soon as the prohibition is lifted"). Indeed, the Federal Circuit, in considering a federal takings claim involving the Walker Creek Unit, although expressing some doubt about whether *Tahoe-Sierra*'s holding went beyond temporary development moratoria, explained that whether a permanent restriction that later is revoked constitutes a temporary taking is a question that must be analyzed under *Penn Central. Boise Cascade Corp. v. U.S.*, 296 F3d 1339, 1347 (Fed Cir 2002), *cert den*, 538 US 906 (2003). In short, the state was entitled to a directed verdict for a third reason: Boise pleaded only a temporary *per se* regulatory taking.

## D. *None of Boise's Remonstrations Has Merit*

Boise makes several arguments in response. It begins with the assertion that the Oregon Supreme Court "announced a major change in Oregon property law" when it stated in *Coast Range Conifers* that standing timber is part of the underlying real property and not a severable interest for purposes of the whole parcel rule. It claims that the Supreme Court ignored its own holding in *Hawkins v. City of La Grande*, 315 Or 57, 70-71, 843 P2d 400 (1992), that growing crops are a separate property interest from the real property on which they grow. Boise asserts that "state courts are not free to redefine their property laws in order to avoid a regulatory taking" under the Fifth Amendment, so that this court cannot rely on the Supreme Court's pronouncement in *Coast Range Conifers* regarding the nonseverability of Boise's timber.

■ Boise's argument, regardless of its merit, is directed to the wrong court. The Supreme Court's pronouncement in *Coast Range Conifers* is binding on this court. Under that holding, an allegation that a state regulation has deprived a property owner of only one interest out of several—the interest in its timber, in this case—does not state a claim for a *per se* regulatory taking under the Fifth Amendment Takings Clause.

■ Boise next makes an argument based on the law of the case doctrine. In *State v. Montez*, 324 Or 343, 347, 927 P2d 64 (1996), *cert den*, 520 US 1233 (1997), the court explained:

> "It is a general principle of law and one well recognized in this state that when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review."

(Internal quotation marks omitted.) Boise asserts that, in *Boise III*, the Supreme Court "squarely rejected" the state's whole parcel argument and "held that Boise had stated a claim for the taking of 'approximately 56 acres of merchantable timber.'" It claims that,

> "even though [*Coast Range Conifers*] subsequently effected a dramatic change in Oregon property law—by holding that a taking of merchantable timber must be measured with respect to the 'whole parcel' and not as a separate property interest—the law of the case doctrine precludes that subsequent ruling from applying to this case."

Bluntly, Boise asserts that we must ignore Supreme Court precedent that is directly on point—*Coast Range Conifers*—under the law of the case doctrine.

We need not address that precise question, however, because the premise underlying Boise's law of the case argument—that the court in *Boise III* addressed the very same legal issue before us now—is incorrect. In *Boise III*, under the heading " 'Takings' by inverse condemnation under the Oregon Constitution," the court addressed whether Boise

had stated a claim for a taking under Article I, section 18, of the Oregon Constitution. The court first explained that,

> "[t]o establish a [regulatory taking under Article I, section 18,] * * * [t]he property owner must show that the application of the government's particular choice deprives the owner of all *economically viable use of the property*. If the owner has 'some substantial beneficial use' of the property remaining, then the owner fails to meet the test."

325 Or at 197-98 (emphasis in original; citations omitted). The court reasoned that Boise had met that test:

> "In this case, [Boise] has alleged in both its claims for relief that the Board's application of [the regulation] to its proposed logging plans denied [Boise] all economic use of its land. With respect to the first claim for relief, [Boise] has alleged 'depriv[ation] * * * of the only economically viable use of approximately 56 acres of merchantable timber.' Assuming the truth of all well-pleaded facts alleged in the complaint and giving [Boise] the benefit of all favorable inferences that may be drawn from those facts, that allegation is sufficient to meet the 'deprivation of all economically viable use of the property' standard."

*Id.* at 198.

But, for two reasons, that statement is not binding in the present controversy. First, the statement was made in the context of Article I, section 18. On remand following that decision, Boise dropped its state constitutional claim, so any statement that the Supreme Court made regarding the viability of that claim is no longer at issue.[6] Second, in evaluating Boise's claim, the court had before it Boise's "supplemental complaint." That complaint, unlike the complaint at issue here, alleged a more general taking under the Fifth Amendment. That is, unlike the "second supplemental complaint" at issue now—which explicitly limits its allegations to a *per se* taking under *Lucas*—the complaint addressed by this court in *Boise II* and by the Supreme Court in *Boise III* included

---

[6] Indeed, in *Coast Range Conifers*, the Supreme Court explained that, in *Boise III*, "the state did not argue before this court that the whole parcel rule should apply, and this court did not address, much less purport to resolve, that issue." 339 Or at 148.

much more general allegations, allegations that could include a *Penn Central* claim:

"COUNT TWO
"(Inverse Condemnation—U.S. Constitution)

"The Board's denial of plaintiff's amended plan also constituted a taking of plaintiff's merchantable timber for a public purpose which requires just compensation under the Taking and Just Compensation Clause in the Fifth and Fourteenth Amendments to the U.S. Constitution."

Because the complaint at issue in *Boise III* was materially different from the complaint we now address, and because the court's statement in *Boise III* was limited to Boise's state constitutional claim, it is not "binding" or "conclusive" in this appeal.[7]

Boise's next argument in response to the state's arguments on cross-appeal is that the whole parcel rule applies even if only most of the parcel is taken. It asserts that,

"even if the entire 65 acres is the 'whole parcel' by which the State's taking must be measured, the [state's] regulation deprived Boise of 96.7 percent of the fair market value of the entire 65-acre parcel. Moreover, the State prohibited logging of 56 of 65 acres, meaning that [Boise] was precluded from logging 86 percent of a 65-acre tract."

(Footnote omitted.) As authority for that view, Boise asserts that "*Lucas* recognized that deprivations that are 'one step short of complete,' 505 US at 1019 n 8, and in particular takings of 95 percent of the economic value of property, may be compensable under the Fifth Amendment. *Id.*"

But that statement from *Lucas* does not help Boise here. In *Lucas*, the majority—in response to Justice Stevens's dissenting assertion that the whole parcel rule would have inequitable results—reiterated that its holding applies only to *per se* regulatory takings. The Court emphasized that an

---

[7] Although, in *Boise II*, this court asserted that Boise had stated a claim under the federal constitution, that statement referred to the more general allegations in the earlier complaint, so, for the reason stated in the text, that statement also does not constitute the law of the case under the present circumstances.

owner deprived of the use of most of its property might have a takings claim under the usual balancing approach of *Penn Central*. The Court went on to defend the whole parcel rule, even in the context of a property owner whose property is reduced to five percent of its previous value by government regulation:

> "It is true that in at least *some* cases the landowner with 95% loss will get nothing, while the landowner with total loss will recover in full. But that occasional result is no more strange than the gross disparity between the landowner whose premises are taken for a highway (who recovers in full) and the landowner whose property is reduced to 5% of its former value by the highway (who recovers nothing). Takings law is full of these all-or-nothing situations."

*Lucas*, 505 US at 1019 n 8 (emphasis in original).[8] Like the property owner in *Lucas*, Boise has made no claim under *Penn Central*. With respect to categorical takings of the type that Boise has alleged, neither the United States Supreme Court nor the Oregon Supreme Court has ever applied an "almost" whole parcel rule under the Fifth Amendment.

Finally, Boise argues that *Tahoe-Sierra* does not support the result we reach. It asserts that the analysis and holding in *Tahoe-Sierra* apply only to "planning moratoria on residential construction," and that they do not govern "a situation, such as this, in which there was a permanent ban on the use of commercial income property that was subsequently rescinded." In support of that reading of *Tahoe-Sierra*, Boise cites *Lucas* and *Seiber*. But no authority cited by Boise can sustain that narrow view.

As noted above, in *Boise V*, we described the holding in *Tahoe-Sierra* without any suggestion that it applies only to

---

[8] In *Tahoe-Sierra*, the Court reiterated that, in *Lucas*, its "holding was limited to the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted." 535 US at 330 (emphasis in original). The Court continued:

> "The emphasis on the word 'no' in the text of the opinion was, in effect, reiterated in a footnote explaining that the categorical rule would not apply if the diminution in value were 95% instead of 100%. Anything less than a 'complete elimination of value,' or a 'total loss,' the Court acknowledged, would require the kind of analysis applied in *Penn Central*."

535 US at 330 (citations and footnote omitted).

"planning moratoria on residential construction," and nothing in the *Tahoe-Sierra* opinion itself suggests such a crabbed reading. Nor does anything in *Seiber* suggest that a temporarily applicable regulation can support a *per se* taking under *Lucas*. Instead, the Federal Circuit in that case merely mentioned that temporary regulatory takings exist; it never suggested that such takings could be analyzed in any manner other than under *Penn Central*. *Seiber*, 364 F3d at 1364. The discussion in *Lucas* to which Boise points is to the same effect. *Lucas*, 505 US at 1030 n 17. In *Tahoe-Sierra*, the Court observed that "[r]ecovery under a *Penn Central* analysis is * * * foreclosed * * * because petitioners expressly disavowed that theory[.]" 535 US at 334. So, too, here. Boise chose to pursue only a federal claim, and only a *Lucas per se* takings claim, at that. Yet this is not the rare, "extraordinary case" in which a *Lucas* claim is appropriate, and the trial court erred in denying the state's motions for directed verdicts.

### E. *Boise's Arguments on Appeal*

As noted, Boise makes a number of arguments on appeal. We do not address Boise's argument regarding the amount of interest on the award of compensation, as it is moot. We reject Boise's other arguments without discussion, except for one, which we address briefly. As noted above, while the state's motion for a plenary retrial was pending, Boise sought—five weeks before trial was scheduled to begin—to reinstate its state constitutional claim under Article I, section 18, a claim that it had voluntarily dismissed nearly seven years earlier. The state argued in response that (1) the claim was barred by the statute of limitations; (2) the dismissal of the claim had become final after *Boise V* and it could not now be revived; and (3) that it would be prejudiced by reinstatement of the claim. The trial court denied the motion, and Boise assigns error to that ruling.

On appeal, Boise presents two arguments as to why the trial court erred. First, it asserts that the statute of limitations does not bar the claim because it relates back to a timely filed claim. Second, according to Boise, the state would have suffered no prejudice had the trial court allowed the amendment. The state urges several grounds for affirmance: (1) the claim's dismissal became, as the state argued in the

trial court, final after *Boise V*; (2) the allegations in the proffered complaint did not state a claim under Article I, section 18; (3) Boise's proposed amendment was untimely; and (4) the trial court did not, in any event, abuse its discretion in denying Boise's motion. Because we agree with the last of the state's contentions, we need not address the others.

■        In *Ramsey v. Thompson*, 162 Or App 139, 145, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000), we identified, in the context of judicial assessment of a motion to amend a complaint,

> "four considerations bearing on the appropriate exercise of discretion: (1) the nature of the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendments."

Here, although the claim was one that the state had seen before, it had been more than six years since Boise had voluntarily dismissed the claim, and the state had no reason to suspect until Boise moved to reinstate the claim that it would have to defend against it. At that stage of the proceedings, the state would have been prejudiced by Boise's virtually last-minute request to reinstate the claim. As the state explains,

> "[I]f Boise had been allowed to pursue its claim under the Oregon Constitution, that claim would have exposed the [state] to an award of attorney fees. * * * Had Boise not voluntarily dismissed its claim at the end of its first trial, the presence of that claim might have prompted the [state] to settle the case; to refrain from pursuing the appeal it pursued in *Boise V*; to seek increased discovery after the remand in *Boise V*; to invest more resources on certain potentially-dispositive motions and arguments; or to take actions that might have minimized the expenses incurred by Boise's attorneys. Because the [state] took—and refrained from taking—a number of actions based on circumstances that Boise created, it would be wholly unfair to now allow Boise once again to alter the legal landscape."

Furthermore, under the second and fourth factors articulated in *Ramsey*, the legal landscape at the time of Boise's motion also supports the conclusion that the trial

court did not abuse its discretion. At that time, this court had held that, in contrast to the federal constitution, the "whole parcel rule" did not apply to regulatory takings under the Oregon Constitution. *Coast Range Conifers v. Board of Forestry*, 189 Or App 531, 550, 76 P3d 1148 (2003), *adh'd to on recons*, 192 Or App 126, 83 P3d 966 (2004), *rev'd*, 339 Or 136, 117 P3d 990 (2005). That difference would have required the state to litigate additional issues at trial and to appeal adverse rulings related to the applicability of the whole parcel rule under the Oregon Constitution. Additionally, the Supreme Court's subsequent holding in *Coast Range Conifers* that the whole parcel rule applies under Article I, section 18, casts significant doubt on the "colorable merit" of Boise's proposed claim.

Finally, the third *Ramsey* factor—the timing of the proposed amendment—supports the trial court's decision not to allow the amendment. After more than a decade of litigation, Boise sought—weeks before a second retrial—to reinstate a claim that it had voluntarily dismissed more than six years earlier. In opposing Boise's motion to amend, the state alternatively sought a continuance of the trial date, a request that posed obvious docket management issues for the trial court after an already lengthy procedural path to a final adjudication of the case. The trial court was entitled to rely on the late timing of Boise's request in deciding not to allow the amendment.

■■ It is true, as Boise argues, that under ORCP 23 A, "leave [to amend] shall be freely given when justice so requires." But, "[t]he trial court has broad discretion in determining when justice requires amendment to a complaint, and its decision will not be disturbed unless it is shown that the court exceeded the bounds of its discretion." *Contractors, Inc. v. Form-Eze Systems, Inc.*, 68 Or App 124, 129, 681 P2d 148, *rev den*, 297 Or 824 (1984). Here, taking into account all four of the *Ramsey* factors, we cannot say that the trial court abused its discretion in denying Boise's motion to reinstate its state law takings claim.

Affirmed on appeal; reversed on cross-appeal.